WILLIAM SHIRTS, Plaintiff in Error, *vs.* HENRY OVERJOHN, Defendant in Error.

1. *Bills and notes—Maker's signature procured by fraud—Negligence of maker—Rights of bona fide holders.*—Where it appears that the party sought to be charged intended to bind himself by some obligation in writing, and voluntarily signed his name to what he supposed to be the obligation he intended to execute, having full and unrestricted means of ascertaining for himself the true character of such instrument before signing it, but neglecting to avail himself of such means of information, and relying on the representations of another as to the contents of the instrument, signed and delivered a negotiable promissory note, instead of the instrument he intended to sign, he cannot be heard to impeach its validity in the hands of a *bona fide* holder.

2. *Bills and notes—Presumption—Admission.*—It will be presumed, in the absence of proof to the contrary, that the holder of negotiable paper received it for value, before maturity, and in the regular course of business; but, in the absence of admissions in the pleadings or in the testimony of the defendant, it is error to instruct the jury that such presumptions are admitted facts.

3. *Bills and notes—Cases in judgment.*—O., supposing he was signing a receipt for plows, to be left with him on sale, signed and delivered a negotiable promissory note. The plows were never delivered. Learning afterwards the true character of the instrument, and that the payee was endeavoring to negotiate it, O. caused a notice to be published, warning the public against purchasing the note. Thereupon, E.; the payee, complained to O. that he was doing him an injustice, saying that he had sold two of the plows and would endorse a credit of fifty dollars on the note. To this proposition O. assented, and the endorsement was made and O. signed the memorandum. *Held*, (1.) That as a matter of law, the circumstances under which the note was signed constituted no defense to an action on it by a *bona fide* holder ; and (2.) that the act of O. in assenting to and signing the endorsement on the note, after acquiring full notice of its true character, amounted to a ratification of the instrument.

## Error to Linn Circuit Court.

*H. Lithgow*, for Plaintiff in Error.

I. After defendant had advertised the note in a newspaper, he placed his name on the back of the note, thereby ratifying his own act ; and the endorsement or acceptance of a note or bill is an admission of the truth of all the facts which are recited in it. (1 Greenl. Ev., § 196 ; 1 Phill. Ev., 364 and n. 1.) Defendant was guilty of gross negligence and is estopped from taking advantage of his culpable conduct. (2 Par. Conts., 797, 798, and n. *w.*) He had a remedy by injunction

20—VOL. LX.

| | |
|---|---|
| 60 | 305 |
| 99 | 143 |
| 34a | 302 |
| 60 | 305 |
| 46a | 447 |
| 60 | 305 |
| 52a | 597 |
| 60 | 305 |
| 67a | 155 |
| 60 | 305 |
| 71a | 600 |
| 60 | 305 |
| 74a | 389 |
| 75a | 171 |
| 60 | 305 |
| 162 | 106 |
| 162 | 553 |
| 60 | 305 |
| 101a | [2]189 |
| 60 | 305 |
| 95a | [2]425 |

(Hill. Inj., 631, 632; 2 Sto. Eq., 906; Will. Eq., 356, 360); and should have stopped the negotiation of the note.

II. The court erred in giving the instruction for defendant. It did not leave the question of negligence to the jury, as in the cases of Briggs vs. Ewart, (51 Mo., 245,) and Martin vs. Smylee, (55 Mo., 577,) referred to by counsel for defendant.

*W. H. Brownlee*, for Defendant in Error.

I. The note sued on being procured by fraud the contract is void, if one existed.

II. The signature to the paper sued on being procured by sleight of hand, being substituted in place of the receipt agreed to be signed, it is a forgery and is void. (Briggs vs. Ewart, 51 Mo., 245; Martin vs. Smylee, 55 Mo., 577.)

Hough, Judge, delivered the opinion of the court.

This was an action instituted by Shirts, before a justice of the peace against the defendant, Overjohn, as maker of a promissory note for $200, dated October 19, 1872, and payable twelve months after date, to the order of T. England. There was a judgment for the plaintiff before the justice, and defendant appealed to the Linn County Common Pleas Court. At the trial in the Common Pleas Court, the note was read in evidence without objection, together with an endorsement and guarantee in blank by T. England, and also the following endorsement: "Credit fifty dollars on October 28th, 1872. H. Overjohn."

The defendant, Overjohn, testified as follows: "At the time I made the note sued on, the payee in said note came to me, and wanted me to act as agent for the sale of his plows. England, the payee, was to let me have three plows, but only left one, which was left as a sample to show to farmers, not to sell. At the time I signed the note sued on, I supposed I was giving a receipt for the plows, I never received the plows he promised to send nor anything else. There was no consideration of any kind for the note, which I thought and understood to be a receipt only."

On cross-examination the defendant said that England wrote the note, and he signed it. He afterwards learned that England was trying to sell the note, and he published a notice in the Brookfield Gazette, warning the public not to purchase it. The day after the advertisement, England called on him, feeling badly about the advertisement, and said that he had sold two of the plows; and that he would give him, defendant, credit on the note for fifty dollars.

England then wrote the credit of fifty dollars on the back of the note and defendant signed it. The editor of the Gazette testified that after a single insertion, the defendant withdrew the advertisement, and according to his best impression, said to him at the time. it was all right.

Plaintiff then offered his own and other testimony to show that he was a *bona fide* holder for value and before maturity of the note sued on, which testimony was objected to by the defendant, and excluded by the court, and plaintiff excepted.

The plaintiff asked the following instructions:

1. The jury are instructed that it stands admitted that the plaintiff in this suit purchased said note before it came due, for a valuable consideration, *and without notice of any fraud between defendant and said England.*

2. The jury are instructed that fraud cannot be presumed, but that it must be proven, and although the jury may believe from the evidence, that defendant did not know at the time he signed said note, that it was a note, yet if they believe from the evidence that the defendant placed his name on the back of the note, after he was aware that it was a note, and recognized it as a note, then they will find for the plaintiff.

3. It stands admitted that defendant signed his name on the back of the note in controversy, after he found out that it was a note.

The court refused to give the first instruction as asked, but gave all of it except that portion in italics, and gave the second instruction, and refused the third; to which action of the court, in refusing to give the third and the latter portion of the first instruction, plaintiff at the time excepted.

At the instance of the defendant, the court gave the following instruction : " That if the jury believe from the evidence, that Overjohn, when he signed the note sued on, did not fully understand its character, but thought and understood it to be a receipt for plows, for the sale of which he was to act as agent, and to account to England for them, they are bound to find for defendant." To the giving of which instruction plaintiff at the time excepted.

There was a verdict and a judgment for the defendant, and plaintiff brings the case here by writ of error.

There were no pleadings in this case, and as there was no testimony of the defendant as to the purchase by plaintiff of the note sued on before maturity for value, and without any notice of any fraud on the part of England, the court committed no error in refusing the first instruction as asked by the plaintiff. The *prima facie* presumption of law, that every holder of any negotiable paper is the owner of it; that he took it for value, before dishonor and in the regular course of business, would not have warranted the court in instructing the jury that such presumptions were admitted facts.

The third instruction asked by plaintiff should have been given. It clearly appears from the testimony of the defendant, that after he ascertained that he had signed a note to England, instead of a receipt, and England proposed to allow a credit of fifty dollars upon it, such credit was endorsed upon the note, and was accepted and signed by defendant. This testimony of the defendant constituted an admission as fully as if it had been embodied in an answer. The instruction given by the court on behalf of the defendant is seriously objectionable. It directed the jury to find for the defendant, notwithstanding the fact that he freely acquiesced in and ratified the execution of the note, with full knowledge of his mistake, and before England had negotiated it; besides, it is directly in conflict with the second instruction given for the plaintiff. But another, and, as we think, a very grave error, was committed in directing the jury in this instruction, to find for the defendant, if they believed from the evidence that he

did not fully understand the character of the instrument signed by him, and thought it to be a receipt and not a note, omitting all reference to the testimony of the defendant himself as to the circumstances under which he signed the note, which was all the testimony there was on that subject, and from which it plainly appears that the mistake of signing a note instead of a receipt, resulted solely from his own negligence and carelessness, without any constraint, artifice or fraud whatever on the part of England.' Indeed, on the defendant's own testimony, the plaintiff was entitled to a verdict as a matter of law. The facts testified to by him constituted no defense to the plaintiff's action.

It would be exceedingly difficult to lay down with accuracy a general rule which would be applicable to all cases of this character which might arise; but the result of the best considered cases on this subject may be generally stated to be, that where it appears that the party sought to be charged, intended to bind himself by some obligation in writing, and voluntarily signed his name to what he supposed to be the obligation he intended to execute, having full and unrestricted means of ascertaining for himself the true character of such instrument before signing the same, but by his failure to inform himself of its contents, or by relying upon the representations of another, 'as to the contents of the instrument presented for his signature, signed and delivered a negotiable note in lieu of the instrument intended to be signed, he cannot be heard to impeach its validity in the hands of a *bona fide* holder.

In the case of Foster vs. Mackinnon, Law Reports, 4 C. P. 704, decided in 1869, Byles, J., delivering the opinion of the court, affirmed the charge of the chief justice at the assizes, in which he had directed the jury, that if the endorsement of the defendant of the bill of exchange sued on was obtained upon a fraudulent representation that it was a guarantee, and the defendant signed it without knowing that it was a bill, and under the belief that it was a guarantee, and if the defendant *was not guilty of any negligence in so signing the paper*, he was not liable as endorser to a *bona fide* holder.

In the case of Whitney vs. Snyder, (2 Lansing, 477,) decided by the Supreme Court of New York in 1870, the action was against the defendant as maker of a promissory note, the plaintiff being a *bona fide* holder for value, before maturity. The defendant had offered to prove in defense, *that he was unable to read*, and that when he signed the note, it was represented to him, and he believed, that it was a certain other contract, offered to be also produced in evidence, and which purported to be a contract *inter partes* of an entirely different character. The testimony was rejected, and the Supreme Court held that it should have been received, on the authority of the case of Foster vs. Mackinnon, approving both branches of the rule, as stated in that case, and say, " that it was in its circumstances, quite similar to the case at bar, except that the present is a somewhat stronger case for the defendant *on the question of negligence*." The case of Gibbs vs. Linabury, (22 Mich. 479,) approves the foregoing cases.

In the case of Chapman vs. Rose, (56 N. Y. 137,) decided by the Court of Appeals in 1874, it appears that the defendant entered into a contract, with one Miller, to act as agent for the sale of a patent hay-fork and pulley. A contract was filled out by Miller, and signed by both ; also an order which was signed by the defendant for one of the hay-forks and two pulleys, for which, by the order, defendant agreed to pay nine dollars. These were delivered to the defendant. Another paper was then presented to the defendant for his signature, which Miller represented to be but a duplicate of the order. Defendant, without reading or examining it, signed and delivered it to Miller. The paper so signed was a promissory note for $270, and was the note in suit. The plaintiff purchased in good faith before maturity. The judge charged the jury that if the paper sued upon was never delivered as a note, the plaintiff must fail in the action ; and that, even if it was delivered, and the plaintiff neglected to make proper enquiry as to its origin, he was not a *bona fide* holder, and could not recover. Johnson, J., in delivering the opinion of the whole court, says : " There does not appear to have been any physi-

cal obstacle to the defendant's reading the paper before he signed it. He understood that he was signing a paper by which he was about to incur an obligation of some sort, and he abstained from reading it. He had the power to know with certainty the exact obligation he was assuming, and chose to trust the integrity of the person with whom he was dealing, instead of exercising his own power to protect himself. It turns out that he signed a promissory note, and that it is now in the hands of a holder in good faith for value. The question which arises on the branch of the charge now under consideration is, whether it is enough, as against a *bona fide* holder, to show that he did not know or suppose that he was signing a note, unless it also appears that he was guilty of no laches or negligence in signing the instrument. To that enquiry, the attention of the judge, at the trial, was distinctly called; and the instruction which he gave, and which was excepted to, did not submit, but excluded the consideration of it from the jury. It is quite plain that if the law is, that no such enquiry is admissible, a serious blow will have fallen upon the negotiability of paper. It will be a premium offered to negligence. To insure irresponsibility, only the utmost carelessness, coupled with a little friendly fraud, will be essential. Paper in abundance will be found afloat, the makers of which will have no idea they were signing notes, and will have trusted readily to the assurance of whoever procured it, that it created no obligation. To avoid such evils it is necessary at least to hold firmly to the doctrine that he who, by his carelessness or undue confidence, has enabled another to obtain the money of an innocent person, shall answer the loss." The cases of Foster vs. Mackinnon, and Whitney vs. Snyder, *supra,* and Putnam vs. Sullivan, (4 Mass., 45,) and Douglass vs. Matting, (29 Iowa, 498,) decided in 1870, are cited in support of the foregoing observations; and the charge of the judge presiding at the trial, was accordingly held to be erroneous. In the reasoning of that opinion and the conclusion reached, we entirely concur.

In the cases of Briggs vs. Ewart. (51 Mo., 245,) and Martin vs. Smylee, (55 Mo., 577) which were similar to the case at bar, the instructions which were brought under review, and which received the approval of this court, declared the law to be, that a person signing a promissory note could not be held liable as maker, by a *bona fide* holder, if his signature was obtained *without his fault or negligence*, on the fraudulent representations of the payee that the paper *offered* for signature was not a note, and that the party sought to be charged, did not know it was a note and did not intend to sign a note. Some observations, however, of the judge who delivered the opinion of the court in the case of Briggs vs. Ewart seem to reject the qualification of negligence; and to announce the broad doctrine, that to be binding, the instrument must be executed as, and for the paper it purports to be, and if the party to be charged did not intend to make a promissory note, he cannot be held bound even in favor of a *bona fide* holder for value. These observations and the subsequent case of Corby vs. Weddle, (57 Mo., 452,) in so far as it is based upon them, are disapproved.

We consider the rejection of the testimony offered by the plaintiff, an immaterial matter, as we do not think the defense made devolved upon the plaintiff the duty of showing by positive testimony that he was a *bona fide* holder for value before maturity.

The judgment will be reversed and the cause remanded; all the judges concur except Judge Vories, who concurs in the result.

SHERWOOD, Judge, delivered the following separate opinion.

The doctrine enunciated in Briggs vs. Ewart, (51 Mo., 245,) and, also, in that of Washington Savings Bank vs. Ecky, (Id., 272,) never met with my approval, as will be remembered by my associates who were on the bench at the time, although I did not take the precaution to have my formal dissent entered.

Since then, however, I have caused myself to be placed on the record, in accordance with the opinion I had always entertained. (See Ayres vs. Milroy, 53 Mo., 516; Martin vs. Smylee, 55 Mo., 577.)

And I am truly gratified to see a well settled rule of commercial law, again in the ascendant. (Horton vs. Bayne, 52 Mo., 531.)