JAMES S. CANNON, Plaintiff in Error, *v.* MILTON MOORE, Adm'r, KNOX, deceased, Defendant in Error.

### March 23, 1885.

1. HUSBAND AND WIFE—EVIDENCE—COMPETENCY OF WIDOW IN BEHALF OF HER HUSBAND'S ESTATE.—The common law rule is, that after the death of the husband, the widow is competent to establish facts coming to her knowledge from other sources, and by virtue of her marital relation or situation as wife, notwithstanding they related to the transactions of her husband; as to such facts, so coming to her, she is a competent witness in behalf of the estate of her deceased husband.—1 Greenl. Ev. sect. 338; *Coffin* v. *Jones,* 13 Pick. 443; *Stein* v. *Weidman's Adm'r,* 20 Mo. 18; *Sherwood* v. *Hill,* 25 Mo. 391. This rule is not abrogated by any statute.

2. NEGOTIABLE PAPER—PURCHASER FOR VALUE BEFORE MATURITY IN GOOD FAITH—VALUABLE CONSIDERATION.—Where a person purchases a negotiable note before maturity, for value and in good faith, it would not be affected, in his hands, with any fraud in its procurement, *provided* the maker voluntarily signed it, having the unrestricted means of knowing at the time what he was doing, but neglecting to avail himself of the ready means of information (*Shirts* v. *Overjohn,* 60 Mo. 305); but the purchaser must have taken the note in good faith, without notice of extraneous facts affecting its integrity, and he must have paid a valuable consideration therefor.

3. SAME—FRAUD—ILLEGALITY—PROOF OF CONSIDERATION.—If there be fraud or illegality in the inception of a bill or note, or in the circumstances under which it was taken by the person who endorsed it to plaintiff, he must prove consideration, and this must be a valuable consideration. In default of such proof by the plaintiff the trial court should direct a verdict for defendant.—*Smith* v. *Sac Co.*, 11 Wallace (U. S.) 139 and cases cited.

4. REVERSAL OF JUDGMENT—RULE IN APPELATE COURT.—The appellate court should not reverse a judgment on the ground that the verdict is unsupported by the evidence, unless there be a total absence of any material evidence, or where it so fails to support the verdict, as to necessarily lead to the inference that the jury acted from prejudice or passion.—*State* v. *Musick*, 71 Mo. 401; *State* v. *Zone*, Ib. 415.

Error to Jackson Circuit Court, Hon. F. M. Black, Judge.

*Affirmed.*

Statement of the case by the court.

This is an action on a negotiable promissory note, executed by Thomas Knox, defendant's intestate, in October, 1879, to one C. A. Wright, for the sum of $280, due thirty days after date. The note, the day after its execution, was transferred by indorsement to one John K. Landis, who instituted this suit. During pendency of suit, Landis assigned the action to James S. Cannon, in whose name the suit is continued.

The material facts, developed by pleadings and evidence, are substantially as follows: In September, 1879, two men named Hardy and Martin appeared at the home of Knox, who lived in the country and was a farmer, and, after staying over night with him, proposed to give him an agency to sell a patent "Champion Horse Hay Fork and Carrier." Knox was an old man, quite infirm, little able to read and write. He was prevailed upon by said parties to accept an agency and to sign what was represented by them to be a mere contract of agency, but which turned out to be two promissory notes for $250.00 each, due some time afterwards. The notes were non-negotiable and executed to said Wright. Hardy and Martin disappeared, and immediately after-

wards said Wright pledged one of said notes to said Landis, a livery stable keeper in Kansas City, as collateral security to secure a livery bill of $40, claimed to have been contracted with him by said Wright. The evidence clearly enough established that Landis knew, or soon discovered, that the said note was given for what is generally known as such patent fork, etc., transactions. He consulted an attorney about the matter and shortly afterward arrangement was made between Landis and Wright that they would go out to see old man Knox and try to have the matter fixed up in some more satisfactory way. Landis claims that the only interest he had in the matter was to collect the amount of his livery bill; that he was unwilling to intrust the note he held as collateral with Wright, and, therefore, agreed with Wright that if he would hire a team from him and pay him $5.00 for his time, he would accompany him to Knox's home, and would surrender the note on payment of the $40.00 and the ten dollars additional for the hire of the team and his day's time. Finding that he could not accompany Wright, on the day named, he got one Armstrong to go in his stead, to act in the matter for him.

The evidence tended to show that the parties found old man Knox about his barn, and that Wright proposed to compromise the notes, although they were not then due. Knox told him the notes were fraudulently obtained, and the manner of it. At first Knox refused to have anything more to do with the affair; but Wright represented to him that he would have the notes to pay, and there were incidents of the interview between them tending to show that the old man was much wrought upon, if not alarmed. The result was that Wright succeeded in obtaining from Knox $100.00 in money, and the note in suit. The money was divided between Wright and Armstrong on the premises of Knox, and they returned to Kansas City that night. The next morning Armstrong reported the trip and its incidents to Landis, informing him of Knox's statement to Wright about the fraud in procuring the first notes, etc. Knox, in connection with his

brother-in-law, followed up next morning to hunt the parties who had originally swindled him to have them arrested, and obtained a warrant for that purpose. They reached the stable of Landis in Kansas City by noon of that day, and advised him of their mission, and made inquiry for the offenders. Landis claims that he had already, that morning, bought the last note from Wright, but did not advise Knox of the fact when so at his stable. On the trial of this case, the fact being disclosed that Knox, shortly after making the last note, had died of heart disease, the defendant offered his widow as a witness to testify to the following facts: "Sometime prior to the date of the note in suit, in September of the same year, first, as she remembers, and at the time said two notes herein mentioned were made, two men, strangers to her and whose names she is now unable to state, came to her husband's house and staid over night. They did not make known any business until the following morning. When she came in from milking, these men showed her a cut of said hay fork and an advertisement, which she now here identifies; told her how valuable it was and how much could be made by the agency; a machine was to be put up on the Knox farm, and they were to advertise, and have all the neighbors come in—this apart from her husband; so said Knox signed some papers."

The court admitted this evidence against plaintiff's objection. The court further, over the objection of plaintiff, permitted said witness to make the further statement, that "after the making of the two first mentioned notes, said Armstrong and another man, whom the witness did not and does not know, came to the farm of her husband about the date of the note in suit; they met her husband, defendant's intestate, at the barn; Armstrong came to the house and requested dinner; after a while said other man and her husband came to the house also; when they came Knox was pale and excited, and did not seem at himself; they all ate dinner and went into a room other than that in which they took dinner."

"Afterwards Armstrong and the other man went out by

the pump, and she thought she saw them dividing some money. Knox followed after they left, and got back about 11 or 12 o'clock that night; next day he went and got my brother, Thomas Rice, and followed them again."

The court gave three instructions of its own motion, in words and figures following:

"No. 1. The note sued upon in this action is a negotiable promissory note, and the rights of the parties to this suit must be governed by the law relating to such paper, as hereafter it is stated to you to be."

"No. 2. It is admitted by the pleadings that said Knox signed the note sued upon, and it is also admitted that the note sued upon was given by said Knox in lieu of two other notes made by said Knox to Hardy, and that these were non-negotiable notes."

"No. 3. If you find from all the evidence that one Hardy falsely represented to Thomas Knox that the said two notes were contracts for an agency to sell the Champion Hay Fork and Carrier in certain portions of Jackson county, and were not obligations for the payment of money, and, without knowing what they really were, he was by such false representations induced to sign the same; that Wright became the holder of one of said notes, and the plaintiff became the holder of the other as collateral security for a debt of $40 or $50 due to him from said Hardy and Martin, or either of them, then said Knox was not bound to pay said notes, or either of them, to said Wright or to plaintiff, or to any one else; and if you find from any or all the evidence that said two non-negotiable notes were thus procured by Hardy by the false representations aforesaid, and you shall also further believe that said Wright procured the said Knox to make the note in suit in lieu of the said non-negotiable notes, and that he did so by falsely representing to Knox that he, said Knox, was liable on and would have to pay said two notes, and by these representations said Knox was induced to make the note sued upon, and that said Wright transferred the note to Landis, and that Landis, when he took the same from Wright, knew that said two

non-negotiable notes had been procured by the false and fraudulent representations of said Hardy, as aforesaid, and also knew that the note sued upon had been procured by the false representations aforesaid of said Wright, then you should find for the defendant. The burden of proving these matters set forth in this instruction devolves upon the defendant.''

Thereupon the plaintiff asked the court to instruct the jury as follows:

"If the jury shall believe from the evidence that defendant's intestate had, prior to the date of the note sued on in this case, made the two non-negotiable notes mentioned in defendant's answer; that said Wright, the payee in the note in suit, was the assignee of said two non-negotiable notes first mentioned; that there was a dispute between said Wright and defendant's intestate, Thomas Knox, as to the liability of said Knox on said notes; that said Wright and said Knox compromised and settled their said dispute, by the said Knox paying the said Wright $100 in cash, executing and delivering to said Wright the note in suit and taking up the said two first mentioned notes; that said Wright indorsed and delivered the note in suit for value to said Landis before the maturity thereof, and said Landis has since sold and transferred said note to plaintiff, then the jury will find for said plaintiff and assess his damages at the amount specified in said note and interest thereon at 10 per cent. per annum from the maturity thereof.

The court refused to give said instruction, as asked by the plaintiff, but modified and gave said instruction as modified in words and figures following: (The same as the preceding, with the following addition thereto) "Unless it shall have been made to appear from all the evidence to your satisfaction, that the note sued upon was procured by the false representations of said Wright, as before stated in these instructions, and that said Landis knew that it had been so procured when he took the same.''

The jury found the issues for defendant, and judgment

was entered accordingly, from which the plaintiff prosecutes this writ of error.

R. O. Boggess, for plaintiff in error.

I.   The note in suit is negotiable; it was endorsed for value before maturity. If there was any fraud, deceit, or unfairness attending the execution of the note, Landis (assignor of plaintiff) did not know thereof when it was endorsed to him.

II.   The evidence of widow of deceased is in part incompetent, because irrelevant, immaterial, and hearsay; and in part because the witness was incompetent. So the whole of her evidence ought to have been excluded. —*Holman* v. *Bacchus*, 73 Mo. 49.

III.   The instruction given by the court of its own motion, numbered three, was not warranted by the evidence, and there was no evidence on which to predicate the modification appended to the instruction asked by the plaintiff.

IV.   Even if plaintiff's assignor (Landis) had known every fact alleged in connection with the execution of the two non-negotiable notes before taking the note in suit, yet, inasmuch as said Knox had, with full knowledge of all the facts, paid one hundred dollars on, taken up said two notes, and made the negotiable note in suit, said Landis was entitled to recover.— *Shirts* v. *Overjohn*, *supra*.

E. P. Gates and Milton Moore, for defendant in error.

I.   The testimony of Mrs. Knox does not fall within the rule laid down in *Holman* v. *Bacchus* (73 Mo. 49) and is clearly competent.—Wharton on Evid., vol. 1, sect. 429, and authorities cited; 1 Greenl. Evid., 14th ed. sect. 338; *Spalding* v. *Conway*, 51 Mo. 51. But in any event, the admission of this testimony in no way influenced or prejudiced the plaintiff's case before the jury.

II.   We think the court properly submitted to the jury the question whether or not Wright obtained the note sued on from Knox by fraudulent representations.

III.   We think the court properly submitted to the jury the question whether or not at the time Landis purchased the note sued on from Wright, he knew that the two non-negotiable notes had been procured by the false and fraudulent representations of said Hardy; and also knew that the note sued upon had been procured by the false representations of said Wright.—*Edwards et al.* v. *Thomas,* 66 Mo. 468.

IV.   The two original notes were without consideration and were procured by fraud.   The note sued on, having been given in lieu of the two, was also without consideration, and, Landis purchasing the same with knowledge of these facts, no recovery can be had in this case.—Daniel on Negotiable Inst., sect. 177.

Opinion by PHILIPS, P. J.

1.   The first objection lodged against the action of the trial court is the admission of the evidence of the widow of Knox.   It is claimed that this evidence comes within the rule of incompetency declared in *Holman* v. *Bacchus* (73 Mo. 49.)   In that case section 4014 of Revised Statutes, 1879, was construed by the court to disqualify the surviving wife as a witness to prove what was said by another in conversation with her husband, even though she did not detail what the husband said; and, further, that said section renders her incompetent to prove any act done by the other party as part of the *res gestæ,* explainable by such conversation.

It is to be observed that in that case the wife testified to what the other party said to her husband in connection with the thing done.   It was held that her statement was inadmissible.

But that is not this case.   They differ in essentials. The first fact testified to by the wife or widow of Knox pertained solely to the incidents of the two men coming to her husband's house and remaining over night, and to what they said to her next morning, and what they did in her presence, apart from her husband.   This did not touch upon any conversation to which her husband

was a party, nor any act explainable by any conversation between him and the other party.

We understand the common-law rule to be, that, after the death of the husband, the widow is competent to establish facts coming to her knowledge from other sources, and not by virtue of her marital relation or situation as wife, "notwithstanding they related to the transactions of her husband; as to such facts, so coming to her, she is a competent witness in behalf of the estate of her deceased husband."—Greenl. Ev., sect. 338; *Coffin* v. *Jones,* 13 Pick. 443; *Stein* v. *Weidman's Adm'r,* 20 Mo. 18; *Sherwood* v. *Hill,* 25 Mo. 391.

This rule is not abrogated by any statute.

So in respect of the second statement to which the widow was permitted to testify, she spoke not of any conversation had, to which her husband was a party. She testified merely to physical facts, or obvious acts, passing before her eyes, with which her marital relation had no legal connection.

Nor do we think the other objection to this evidence well taken, that her husband not being a party to the conversation between her and the patent fork vendors, and Landis not being present at either of the times mentioned, the same is hearsay, or *res inter alios acta.*

Two of the basal issues involved in this controversy were: Was the first transaction, by which Hardy and Martin obtained the first two notes, fraudulent, and was there deception and fraud employed by Wright in procuring the last note? The evidence, however slight, reasonably tending to aid the jury in discovering the real facts of the matter, was clearly admissible. Fraud, as Judge Cooley puts it, being "peculiarly a wrong of secrecy and circumvention—to be traced not in the open proclamation of the wrong-doer's purpose, but by the indications of covered tracks and studious concealments," the proof of it is often and necessarily made up of small particles of facts and incidents, the sum of which may make a fortress of strength.

2.   The chief insistance of the able counsel for the

plaintiff in error is, that the note in suit being negotiable, and endorsed to the plaintiff, Landis, for value before maturity, it was not subject to the defence, in his hands, interposed herein. In other words, his contention is, that there was not sufficient evidence of guilty participation on his part in the fraudulent transaction, to warrant the trial court in submitting the issue to the jury.

We may concede the law to be, that if the plaintiff purchased the note before maturity, for value and in good faith, it would not be affected in his hands with any fraud in its procurement, provided the maker voluntarily signed it, having the unrestricted means of knowing at the time what he was doing, but neglected to avail himself of the ready means of information.—*Shirts* v. *Overjohn*, 60 Mo. 305.

Involved, however, in this postulate are two fundamental propositions: first, the purchaser should have taken the note in good faith without notice of the extraneous facts affecting its integrity, and second, he must have paid a valuable consideration therefor.

That the two notes first obtained from Knox were tainted with fraud and were without consideration, admits of little debate. I am also persuaded from a careful reading of the record, that there was quite enough evidence before the court to warrant it in sending the case to the jury on the inquiry as to Wright's fraud and deception in procuring from Knox the note in suit. On that question, in view of the instructions of the court, we must, on well-settled principles, presume that the jury passed in reaching their verdict. Their finding as to such issue should bind this court.

The only remaining question, therefore, for our consideration is, was Landis an innocent purchaser for value? Having determined that the verdict of the jury in effect found the participation of Wright in the imputed fraudulent procurement of the note, by which we feel bound as to that issue, I do not see how the trial court could have properly taken the remaining issue from the jury, for the law is, that "if there be fraud or illegality

in the inception of a bill (or note) or in the circumstances under which it was taken by the person who endorsed it to plaintiff, he must prove consideration." ·

This must also be a· valuable consideration. In default· of such proof by the plaintiff, the trial court should direct a ·verdict for defendant.—*Smith* v. *Sac County*, 11 Wall. 139, and authorities cited. Now as to whether Landis paid one cent for this note, or when and how he paid for it, depend wholly upon his unsupported testimony at the trial. Whether or not he was to be credited or disbelieved belonged exclusively to the jury. The judge on the bench had no right to interfere with their province and discretion. The jury are the sole judges of the credibility of the ·witnesses and the weight of the evidence, and the court has no power to coèrce their judgment and opinion.—*Gregory* v. *Chambers*, 78 Mo. 298-9.

If we felt called upon to trace out in this record the evidence of Landis' guilty knowledge in this discreditable adventure, we think we might discover "the indications of covered tracks and studious concealments." We are disposed to adhere to the rule, announced in *State* v. *Musick* (71 Mo. 401) and *State* v. *Zone* (Ib. 415), that the appellate court should not reverse a judgment on the ground that the verdict is unsupported by the evidence, unless there be a total absence of any material evidence, or where it so fails to support the verdict, as to necessarily lead to the inference that the jury acted from prejudice or passion.

Taken as a whole, we think the instructions clearly enough presented the issues in the case; and we fail to discover in them anything calculated to mislead or confuse the jury. The jury found against the plaintiff on the facts, and he must submit to their opinion.

The judgment of the circuit court is affirmed. All concur.