THE FIRST NATIONAL BANK OF CAMERON, Appellant, v. Z. T. STANLEY, Respondent.

Kansas City Court of Appeals, November 9, 1891.

1. **Bills and Notes:** FRAUD AS A DEFENSE: EVIDENCE IN RELATION TO OTHER NOTES. In an action on a negotiable promissory note by an indorsee, where the defense is fraud, evidence of controversies had, at about the time of the giving of the note in suit, between the payee and other parties about other notes, is inadmissible and its introduction necessarily harmful.

The First Nat. Bank of Cameron v. Stanley.

2. ——— : ——— : EVIDENCE OF SIGNATURE OF FIRST INDORSEE TO LETTER. In an action on a negotiable note by the second indorsee where the defense is fraud, it is error to admit in evidence a letter of the first indorsee unconnected with the transaction, but admittedly signed by him for the purpose of permitting the jury to compare the signature thereon with the signature of another letter tending to show notice of the fraud on the part of the indorsee and purporting to have been written by him, which he denies ; the rule now being that papers not a part of the case, and not relevant, as evidence to the other issues, are excluded.

3. ——— : SIGNING NOTE INSTEAD OF ANOTHER PAPER. Where one intends to bind himself by some obligation in 'writing and voluntarily signs his name to what he supposes to be the intended obligation, with full means of ascertaining the true character of the instrument before signing, but negligently or by misrepresentation of another signs and delivers a negotiable note in lieu of the instrument intended, he cannot be heard to impeach its validity in the hands of a *bona fide* holder.

4. ——— : ——— : INNOCENT HOLDER : NOTICE. Before an indorsee's title to a negotiable note can be impeached on account of notice of fraud, he must have actual notice of the facts which impeach the validity of the paper, and such circumstances as would likely arouse suspicion or put a prudent man on inquiry will not suffice.

5. ——— : ——— : BURDEN OF PROOF. The mere possession of an indorsed negotiable note imports *prima facie* that the holder acquired it *bona fide;* but, when the maker shows it had its origin in fraud, it is then incumbent on the holder to prove that he received it *bona fide* before maturity and for value.

6. ——— : ——— : GOOD FAITH OF FIRST INDORSEE. If the first indorsee in good faith and for value purchases a negotiable note before maturity, and subsequently assigns the same, then his indorsee acquires good title, although he at the time may have had notice of the fraud in the inception of the paper.

*Appeal from the LaFayette Circuit Court.*—Hon. Richard Field, Judge.

REVERSED AND REMANDED.

*Wallace & Chiles, I. W. Whitsett* and *William Aull,* for appellant.

(1) The court below erred in the admission of illegal, irrelevant and incompetent evidence on the part

of the defendant. *Merrick v. Phillips*, 58 Mo. 436; *Hamilton v. Marks*, 63 Mo. 167, at 175. Much of this evidence objected to is hearsay, and *inter alios acta*, so far as plaintiff is concerned, and all of it irrelevant and immaterial. *O'Neil v. Crain*, 67 Mo, 250; *Fongue v. Burgess*, 71 Mo. 389; 1 Greenl. Ev. [ 4 Ed. ] secs. 171, 190; *State v. Whelehon*, 102 Mo.17, at 23; *Shirts v. Overjohn*, 60 Mo. 305, at 310–311; *Woodard v. Spiller*, 1 Dana (Ky.) 180; 25 Am. Dec. 139. Witnesses to be qualified to testify by comparison of handwriting must be "experts." Swearing men on a jury does not transform them into "experts," as to handwriting. *State v. Owen*, 73 Mo. 440; *State v. Grant*, 74 Mo. 33; *State v. Hastings*, 53 N. H. 460; *Chance v. Railroad*, 32 Ind. 474; *Bragg v. Colwell*, 19 Ohio St. 413. Again, the letter adopted as the standard of comparison had no reference to the questions in issue nor connected therewith in this cause. *Smith v. Walton*, 8 Gill, 86; *Williams v. Drexel*, 14 Md. 566; *Tome v. Railroad*, 39 Md. 90–93; *Whiting v. Brunell*, 8 La. Ann. 429; *State v. Fritz,* 23 La. Ann. 55; *Clark v. Rhodes*, 2 Heisk. 206; *Hanley v. Gandy*, 28 Tex. 211; *Moore v. United States*, 91 U. S. 270; *State v. Clinton*, 67 Mo. 380, at 383–385; 1 Greenl. Ev. [ 4 Ed.] sec. 578; *State v. Scott*, 45 Mo. 302, at 305; *Hicks v. Person*, 19 Ohio, 426; *Doe v. Newton*, 5 Ad. & E. 514; *Van Wyck v. McIntosh*, 14 N. Y. 442; *Dubois v. Baker*, 30 N. Y. 355; *Bank v. Mudget*, 44 N. Y. 524; *Randolph v. Laughlin*, 48 N.Y. 459; *Goodyear v. Vosbargh*, 63 Barb. 156; *Impertz v. People*, 21 Ill. 375; *Kernin v. Hill*, 37 Ill. 209. The court below erred in refusing instructions, numbered 2, 4 and 8, as asked for by plaintiff, and erred in modifying and changing such instructions. These instructions as asked enunciate correct principles of law applicable to the case, and hypothecate sufficient facts to authorize a finding thereon for plaintiff, and should have been given. *Funkhouser v. Lay*, 78 Mo. 465, and cases cited;

*Crow v. Alexander*, 24 Mo. App. 164; *Craig v. Zimmerman*, 87 Mo. 475. (3) The court below manifestly erred in refusing to give to the jury the instruction, numbered 3, asked for by plaintiff. *Hamilton v. Marks*, 63 Mo. 167, at 175, 178, and cases cited; *Goodman v. Harvey*, 4 Ad. & El. 870. The doctrine of *Gill v. Cabit*, 3 B. & C. 466, and that of *Hamilton v. Marks*, 52 Mo. 78, has been repeatedly overruled, and long since exploded. *Edwards v. Thomas*, 63 Mo. 467, at 483, point 3; *Goodman v. Simmons*, 20 How. (U. S.) 343; *Bank v. Neal*, 22 How. 96; *Murry v. Lordner*, 2 Wall. 110; *Magee v. Badger*, 34 N. Y. 247; *Bank v. Hoge*, 35 N. Y. 56; *Seyvel v. Bank*, 54 N. Y. 288; *Phelan v. Moss*, 67 Penn. St. 59; *Lake v. Reed*, 29 Iowa, 258; *Johnson v. Murray*, 72 Mo. 278; *Bank v. Stoneware Co.*, 4 Mo. App. 276, at 282-3; *Pana v. Bowler*, 107 U. S. 529, at 541-543. (4) Possession of the note by plaintiff was *prima facie* evidence that he had acquired it in good faith for value in the usual course of business. *Grette v. Loxen*, 7 Mo. App. 97, at 98; *Bank v. Stoneware Co.*, *supra; Shirts v. Overjohn*, 60 Mo. 305. (5) The court below manifestly erred in giving to the jury the instruction, numbered 1, on the part of defendant. This instruction, in words and in effect, tells the jury that the note in issue was "fraudulently obtained" by Eberle, if obtained "by representing that it was a contract for medical services and medicines that defendant was signing," without a particle of evidence of "any physical obstacle to the defendant's reading the paper before he signed it," and his own testimony showing that "he understood that he was signing a paper by which he was about to incur an obligation of some sort, and he abstained from reading it." *Shirts v. Overjohn*, 60 Mo. 310-311, and cases cited; *Chapman v. Rose*, 56 N. Y. 137; *Hamilton v. Marks*, 63 Mo., *supra*, 175-178. (6) The court below erred in giving to the jury the instruction, numbered 3, on behalf of defendant. Authorities, *supra*.

*John S. Blackwell* and *J. D. Shewalter*, for respondent.

( 1 )  The evidence of Proctor, as to the occurrences at his hotel, was competent.  *First.*  It tended to show the nature and character of Eberle's business, and, hence the fraudulent character of the note in suit. *Second.*  It showed the time he left Odessa the night of the twenty-second.  *Third.*  An account thereof was published ; Bohart saw it ; whether before or after his alleged purchase was for the jury.  ( 2 )  The testimony of James Buchanan, as to his note, was competent, since it was dated September 3.  Bohart testified he saw the account of Eberle's *modus operandi* after buying the Stanley note, and he never bought another note after that, yet the Buchanan note bore his indorsement, and was sent by him or his son for collection.  ( 3 )  The letter sending the Buchanan note for collection, being signed by W. H. Bohart, and he having sworn it was written and signed by his son in his name and he had authority to sign his name, it was proper for the jury to examine the same, and compare it with other writings of W. H. Bohart.  ( 4 )  There was no error in the instructions ; the law of the case is simple, yet plaintiff asked and obtained a number with slight modification.  If the note was fraudulent, yet if Bohart was a purchaser for value before maturity without notice the plaintiff was entitled to recover.  The court declares the law ; it is supposed the jury will be governed by the law, and, though often given, it is not necessary to tell them expressly to find a verdict for plaintiff, as asked, if they believed, from the evidence, so and so.  But in this case the instructions did as asked more ; they were not hypothetically put, but were peremptory declarations as a matter of law, to find for plaintiff.  They declare, "and the jury will find, for the plaintiff."  The second declared if the plaintiff obtained the note before maturity in the usual course of business,

etc. There was no evidence on which to base this. The instruction substitutes the plaintiff for Bohart. The plaintiff did not so secure the note—it was the mere successor of Bohart, or the Cameron Bank. (5) An examination of the evidence leaves no doubt that Eberle was a confidence man, and that the "innocent purchaser" who buys notes on parties in LaFayette county from a stranger (?) was fully cognizant of his character.

GILL, J.—This is an action on a promissory note, negotiable in form, for $175, executed by defendant on August 22, 1889, and payable to H. A. Eberle, M. D., on or before April 22, 1890. Plaintiff's title to the note comes by virtue of an alleged assignment from Eberle to Bohart and Bohart to it, all made as it is claimed for value in good faith and before maturity. The defense rests upon a claim of a fraud practiced on defendant Stanley by Eberle ; that said Eberle at the date of the note came to the defendant at his farm in LaFayette county, and negotiated with defendant in reference to curing him and his wife of certain ailments. Terms for an assured cure were agreed upon, and a contract was produced which defendant says was to be signed in duplicate, the one to be signed by Eberle and retained by Stanley. and the other to be signed by defendant and held by said Eberle. Defendant admits the signature to the note in suit, but says he signed the same under the belief that it was the duplicate copy of the contract. However this may be, Bohart claims that when he purchased the instrument he had no notice or knowledge of the alleged fraud, and that any fraud in its execution cannot be used to impeach his, or the plaintiff's, title. At the trial in the circuit court before a jury evidence was adduced on the part of defendant tending to prove Eberle's fraud in securing the note, and that Bohart had notice thereof when he purchased the same, while the evidence on the part of plaintiff tended to establish the

contrary. A verdict and judgment was had for defendant and plaintiff appealed.

I. The errors, manifest in this record, are such that the judgment cannot stand. We proceed to notice the more serious of these. First, as to the evidence in the case : Proctor, a hotel keeper at Odessa, Missouri, was permitted, over plaintiff's objection, to relate to the jury what occurred at his house near the date of this note, when and where it seems that other parties had some violent talk with Eberle in relation to other notes; that Eberle became frightened and fled the hotel ·in the night-time, etc. It is difficult to comprehend upon what theory this testimony was admitted. Any controversy that Eberle may have had with others had no possible bearing on the issues of this case. There was no connection shown or pretended between the two acts. The introduction of such evidence could only serve to inflame and prejudice the minds of the jury. Permitting such evidence was clearly error, and almost necessarily harmful, too.

Again the defendant produced at the trial a letter purporting to be written by Bohart. He denied its execution, but said his son wrote the letter and signed his name. Now (for the purpose, I suppose, of contradicting Bohart and to show that he, in person, wrote the signature ) defendant's counsel called his, Bohart's, attention to another letter written by said Bohart to Charles H. Pool, and he, Bohart, admitted the signature thereto to be his. Thereupon the court permitted the jury to take the two letters ( the one confessed and the one denied ) and compare the signatures, with the view of determining whether or not said Bohart wrote the disputed signature. This was also an error. The Pool letter had nothing whatever to do with the case; its contents were wholly foreign to every issue then being tried. The rule in this state seems now well settled, that "papers not a part of the case, and not relevant, as evidence, to the other issues, are excluded, and mainly

on the grounds that, to admit such documents, would lead to an indefinite number of collateral issues," etc. A standard of comparison cannot thus be established in an issue of *non est factum*. *Rose v. Bank*, 91 Mo. 399 ; *Edmonston v. Herring*, 44 Mo. App.

II. Neither do we feel satisfied with the court's action in regard to instructions. There are two theories for the defense to this action, and it is not entirely clear which was relied on. If the defendant while exercising due and proper care was yet by the fraud and artifice and deceit of Eberle induced to sign the note in question, when he thought he was executing another and different paper, then it would seem the plaintiff could not recover, regardless of its *bona fides* or want of notice. *Shirts v. Overjohn*, 60 Mo. 305 ; *Frederick v. Clemens*, 60 Mo. 315 ; *Cannon v. Moore*, 17 Mo. App. 92 ; 1 Dan. Neg. Inst., sec. 849, 850. However, the courts have exacted a rather high degree of care on a party signing a negotiable promissory note under the belief that he was affixing his name to another instrument. In *Shirts v. Overjohn, supra*, the rule gathered from the best-considered cases is said to be, "that where it appears that the party sought to be charged intended to bind himself by some obligation in writing, and voluntarily signed his name to what he supposed to be the obligation he intended to execute, having full and unrestricted means of ascertaining for himself the true character of such instrument before signing the same, but by the failure to inform himself of its contents, or by relying upon the representations of another as to the contents of the instrument presented for his signature, signed and delivered a negotiable note in lieu of the instrument intended to be signed, he cannot be heard to impeach its validity in the hands of a *bona fide* holder." In defending then such a note in the hands of an innocent holder, purchased for value before maturity, it is not enough to prove merely a signing the wrong paper by mistake or inadvertence, or

even that the character of the obligation was misrepresented by another. The law respects too highly the character of commercial paper, as well as the rights of the holder thereof, to permit such a defense in the hands of an innocent third party. The courts give full scope to the rule, that, if one of two innocent parties must suffer, the loss will be visited upon him whose negligence has brought it about. Now, it is clear from defendant's own statement that he was not sufficiently careful when signing this note. He evidently relied upon Eberle's statement without investigating for himself. He will not be permitted to shut his eyes and blindly put his name to a negotiable note, send it out to the world, and then defend a suit brought thereon by a *bona fide* holder on the grounds that he did not mean to put his name to that kind of an obligation. As we read the evidence brought up in this record, then, we find no ground for a defense on this note, if in the hands of a *bona fide* holder.

The only way to defeat this suit is, *first*, to establish Eberle's fraud in procuring the note, and, then, by showing Bohart's knowledge thereof at the time of the purchase, destroy plaintiff's position as an innocent holder. If this is done, then the same defense can be made against the plaintiff as if the suit was prosecuted by Eberle, the payee. It is not enough however that Bohart may have purchased the note from Eberle under such circumstances as would likely arouse suspicion as to the integrity of the note, or that Bohart bought under such circumstances as would put a prudent man on inquiry; but before his title can be impeached on this account, he must have had actual notice of the facts which impeach the validity of the paper. *Hamilton v. Marks*, 63 Mo. 167 ; *Mayes v. Robinson*, 93 Mo. 122. Plaintiff's third instruction correctly declared this feature of the law. It seems doubtful, however, if the last clause of that instruction has any place in this case. It declares that the burden of showing Bohart's bad faith in the purchase of

the note rests with the defendant.  It is true that the mere possession of a negotiable instrument indorsed by the payee imports, *prima facie*, that the holder acquired it *bona fide*, for value, before maturity, and without notice of any facts impeaching its validity.  "But when the maker proves that the instrument had its origin in fraud, it is incumbent then upon the holder to prove that he received it *bona fide*, before maturity, and for value."  *Johnson v. McMurray*, 72 Mo. 282.  Again, if Bohart, in good faith and for value, purchased from Eberle the note in suit before maturity, and if said Bohart subsequently assigned the same to the plaintiff bank, then plaintiff acquired the same title possessed by Bohart, even though the bank at the time of the purchase may have then had notice of Eberle's fraud in procuring the note.  *Craig v. Zimmermun*, 87 Mo. 478. Hence plaintiff's instruction, numbered 8, should have been given, since it correctly declares this feature of the law.

Judgment reversed and cause remanded.  All concur.