## C. I. WILSON, Appellant, v. MARY M. RIDDLER, Respondent.

### Kansas City Court of Appeals, February 10, 1902.

1. **Bills and Notes**: INNOCENT PURCHASER: NOTICE OF EQUITIES. A purchaser of negotiable paper even though he may have cause for suspicion sufficient to put a prudent man on inquiry, or be negligent will in the absence of bad faith acquire good title.

2. ———: ———: ———: EVIDENCE. The evidence relating to the purchaser's notice of infirmities in the title of the payee of a note is reviewed and held insufficient to charge him with such notice.

3. ———: ———: ———: MISPRINT IN OPINION. A misprint is pointed out in the opinion in Brown v. Heffelmeyer, 74 Mo. App. 385, and the case is distinguished from the case sub judice.

4. ———: ALTERATION: INSTRUCTIONS. Question as to material alteration after delivery is held to have been properly submitted to the jury.

5. ———: LETTER OF MAKER: ESTOPPEL. The maker of a note at the same time addressed a letter to the payee relating to the notes and her property and saying the notes would be paid when due. This letter was delivered to the indorsee when he purchased the notes. Held, this did not estop the maker from setting up a want of consideration with notice thereof to the indorsee.

Appeal from Pettis Circuit Court.—Hon. Geo. F. Longan, Judge.

REVERSED AND REMANDED.

Bente & Wilson and John D Bohling for appellant.

(1)   The consideration of negotiable paper in the hands of a bona fide purchaser, for value, before maturity, can not be inquired into.   *Mala fides* alone can open the door to such inquiry.   Gross negligence is not sufficient, but actual notice of the facts which impeach the validity of the note must be brought home to the holder.   Mayes v. Robinson, 93 Mo. 114; Johnson v. McMurry, 72 Mo. 278; Jennings v. Todd, 118 Mo. 296; Bank v. Pipkin, 66 Mo. App. 592; Brown v. Hoffelmeyer, 74 Mo. App. 393.   (2)   Suspicion that a note is without consideration, even though brought home to the transferee before he acquires it, will not be sufficient to prevent a recovery by him, nor will bad faith on his part in taking it.   Borgess Inv. Co. v. Vette, 142 Mo. 560; Brown v. Hoffelmeyer, 74 Mo. App. 393; Hamilton v. Marks, 63 Mo. 167; Johnson v. McMurry, 72 Mo. 282; Manufacturing Co. v. Dickson, 70 Mo. 274; Jennings v. Todd, 118 Mo. 303; Donovan v. Fox, 121 Mo. 247; Goodman v. Harvey, 4 Ad. and Ell. 470; Bank v. Fagan, 7 E. F. Moore P. C. 61, 72; Raphael v. Bank, 33 Eng. Law and Eq. Rep. 276; Crook v. Jadis, 5 Barn & Ad. 909; Blackhouse v. Harrison, 5 Barn & Ad 1098; Miller v. Race, 1 Burr. 452; Grant v. Vaughn, 3 Burr. 516; Swift v. Tyson, 16 Pet. (U. S.) 1; Goodman v. Simonds, 20 How. (U. S.) 343; Bank v. Neal, 22 How. (U. S.) 96; Murry v. Lardner, 2 Wall. 110; Magee v. Badger, 34 N. Y. 247; Seybel v. Bank, 54 N. Y. 288; Brown v. Tourtelotte, 50 P. 195; Phelal v. Moss, 67 Pa. St. 59; Hynes v. Winston, 40 S. W. 1025; Swift v. Smith, 102 U. S. 444; Daniel on Neg. Inst., sec. 775; Bank v. Holm, 71 F. C. C. A. 489; Doe v. Coal Co., 78 F. C. C. 62.   The court erred in refusing appellant's fifth instruction.   (3)   The court erred in refusing plaintiff's sixth instruction.   The undisputed evidence is, that appellant, relied upon the respondent's written statement, and was induced thereby to pay $270 for the notes. Hammet v. Barnum, 30 Mo. 289; Smith v. Railroad, 74 Mo. 48.

Wilson v. Riddler.

*J. H. Ashurst* and *Sangree & Lamm* for respondent.

(1) The allegations in the answer relating to fraud and illegality in the inception of the notes are abundantly sustained by the evidence, nor does plaintiff introduce any countervailing proof. From this condition of things, it follows that, by a familiar principle of law, the onus was shifted to plaintiff to prove bona fides in his purchase of the notes, that is, that he came into possession of the notes fairly and honestly in the usual course of business, paid value, etc., and on such issue, it goes without saying, that the jury were the sole judges of the credibility of the witnesses.   Hamilton v. Marks, 63 Mo. 178; Johnson v. McMurry, 72 Mo. 278; Cannon v. Moore, 17 Mo. App. 92; Carson v. Porter, 22 Mo. App. 179; Bank of Cameron v. Stanley, 46 Mo. App. 446; Goodin v. Buhler, 65 Mo. App. 288; Ganz v. Weisenberger, 66 Mo. App. 110; Whaley v. Neill, 44 Mo. App. 316.   (2) While it is true that plaintiff must have actual knowledge of the fraud, etc., and that mere information such as might arouse suspicion will not stand in and of itself for actual knowledge, yet evidence sufficient to put a prudent man on inquiry is admissible to go to the jury as tending to show actual knowledge.   Brown v. Hoffelmeyer, 74 Mo. App. 385, and cases cited.   (3)   Proof of facts from which the inference would be warranted that the holder had knowledge of the fact of fraud in procuring the notes, or the absence of consideration, or if one willfully and purposely avoided discovery of facts impeaching the validity of the notes, would be evidence of bad faith.   Whaley v. Neill, 44 Mo. App. 316; Studebaker Mfg. Co. v. Dickson, 70 Mo. 272; Wright Inv. Co. v. Fillingham, 85 Mo. App. 534.

ELLISON, J.—This action is to recover judgment on three negotiable promissory notes of $100 each. The defendant prevailed in the circuit court.

There was evidence tending to show that the notes were without consideration, and we shall so consider them in disposing of the controversy. The notes were sold and indorsed by the payee to one Lawson for value before due, and the latter, on the day of his purchase, sold and indorsed them for value to this plaintiff. The sole question on this branch of the case is, whether plaintiff had notice of the infirmity of the paper before, or at the time, he bought of Lawson. The effort at the trial was mainly directed to show that Lawson had notice, and then to so connect him with plaintiff as to leave such strong and reasonable inference that the knowledge of one was the knowledge of the other that the jury could properly base a verdict on such reasonable inference.

We may concede that their business connection was such as to justify a finding that if one had notice, so had the other. What may be termed the affirmative or positive testimony was all to the effect that neither of them had notice. But circumstances are sometimes of sufficient force to overthrow such testimony. The evidence shows that the notes were purchased of the payee on August 4, 1898, in Sedalia. That the defendant lived at Sweet Springs about twenty miles away. That on August 2, either Lawson or the plaintiff asked the cashier of the bank in Sedalia, where they did business, to "make inquiry" in regard to the notes. That the cashier wrote to his correspondent bank at Sweet Springs on August 2 and he received an answer thereto on August 4, saying "that the notes may be paid when due, but he would not under any circumstance discount them and would not advise our friends to do so." Before hearing from the cashier's letter, Lawson learned of a lawyer at Sweet Springs of whom he could make inquiry and he telegraphed him on August 3, receiving an answer by telegram saying he considered defendant's notes to be "gilt-edged."

Both Lawson and plaintiff testify that they did not get any information from the bank cashier before the purchase of

the notes, and we are thus left to a consideration of the cashier's testimony on that head; for the plaintiff has a valid title to the notes (so far as the present point is concerned) unless it is destroyed by the cashier's testimony. We consider it falls far short of such force. Certainly no reasonable man would consider that it was sufficient to base so important a conclusion upon. His testimony turns upon a question of the time when he made a communication in regard to a matter happening more than two years before. The sum and substance of his statements were that he did not know. He received an answer to his inquiry on the 4th, the day the notes were purchased. In order to defeat that purchase he must have communicated with Lawson or plaintiff, before the time of the purchase. All that can be gathered from his testimony is that he *could* have done so. In order to show that he *did* do so, he was pushed to the utmost extreme—counsel going so far as to ask him what his "judgment" was as to when he communicated with Lawson or plaintiff. Property rights would rest on a frail foundation if they could be divested by such indefinite, inconclusive and unsatisfactory evidence.

The finding against plaintiff on this branch of the case can not be permitted to stand without overturning well-settled principles of law governing commercial paper. A purchaser of such paper may have cause for suspicion of defect of title in the holder; he may be negligent, or he may have knowledge of circumstances that would arouse the suspicion of a prudent man and put him on inquiry for further information; yet, in the absence of bad faith, his title will be upheld. Hamilton v. Marks, 63 Mo. 167; Mayes v. Robinson, 93 Mo. 114; Bank v. Stanley, 46 Mo. App. 440.

Defendant has felt the force of the law·as thus stated, and has endeavored to uphold the verdict in the trial court upon the idea that while suspicion or knowledge of circumstances sufficient to put a prudent man on inquiry will not charge a purchaser with notice, yet, under the authority of

Brown v. Hoffelmeyer, 74 Mo. App. 385, such matter may be given in evidence as tending to show actual notice. We examined this question in that case. We likened it to the rule in the sale of personal property (though the effect of what was there said is somewhat lost by the work of the printer in making "was" out of "as" and "this" out of "his" in the seventh line at page 390), and concluded that while such knowledge of circumstances was not, of itself, notice, it was, nevertheless, competent in making up the proof of notice. It was in view of this rule of evidence that defendant placed reliance on information obtained by the bank cashier aforesaid. The answer to his inquiry which he received from Sweet Springs, even if conveyed to this plaintiff, did not convey actual notice of infirmity in the paper. But it contained or suggested enough to put a prudent man on inquiry, and thereby, under the case of Brown v. Hoffelmeyer, was competent evidence on the question of actual notice. But its whole force was lost from the fact that no showing was made that plaintiff received the information before the purchase.

There was another issue in the case. Defendant charges that material alterations were made in the notes after she executed them. If that be the fact plaintiff, conceding him to be an innocent purchaser, can not recover. That issue was properly submitted in the instructions.

It seems that when defendant executed the notes, she likewise signed and gave to the payee a letter addressed to him, wherein she states what property she owned and that she owed nothing except the three notes now in controversy, and that "they will be paid when due or before." This was delivered to plaintiff when he purchased the notes and it is claimed to be an estoppel on defendant. We think not. It was issued contemporaneously with the notes. Its statements that the notes would be paid was no more than the notes themselves stated. The statement was not made for effect upon, or as an inducement to, purchasers. It amounted to

no more and, considering the time it was made, could have had no more influence as a. promise to pay, than the notes themselves contained.

The judgment is reversed and the cause remanded. All concur.