MAYES *et al.*, *Appellants*, v. ROBINSON.

1.  **Negotiable Instruments :** CONSIDERATION : MALA FIDES.. The consideration of negotiable paper, in the hands of a *bona-fide* holder for value, before maturity, cannot be inquired into.  *Mala fides* alone can open the door to such inquiry.  Gross negligence is not sufficient, but actual notice of the facts which impeach the validity of the note must be brought home to the holder.

2.  ———— : ————: RECOURSE. That a negotiable note is taken without recourse cannot, in any manner, affect the rights of an indorsee against the maker, nor can the fact that the indorsee relied upon the security of the deed of trust, and not upon the solvency of the maker, vary the nature of the contract, which is that the maker shall pay the note at maturity to any *bona-fide* indorsee for value before maturity, without respect to any defence to which it might have been liable in the hands of the payee.

3.  ———— : ————: DEED OF TRUST.  A deed of trust given to secure the payment of a note is only a security for the performance of the contract created by the note, and the rights of the parties are to be determined by the relation they sustain to the contract to be performed, and not by the nature of the security.

4. ——— : ——— : ———. A deed of trust given to secure a note is but an incident to the note, and partakes of the negotiability of its principal; and where one takes the note discharged of any equities to which it was subject in the hands of the payee, the deed of trust passes to him discharged of such equities to the same extent.

*Appeal from Johnson Circuit Court.*—HON. N. M. GIVAN, Judge.

AFFIRMED.

*S. P. Sparks* and *John J. Cockrell* for appellants.

(1) The general denial of notice charged in the petition was insufficient to base the defence of innocent purchaser for value without notice upon. The charge should have been specially denied, and the answer affirmatively alleged that he was such purchaser. *Frost v. Beekman,* 1 Johns. Ch. 288; *Murray v. Ballou,* 1 Johns. Ch. 566; *Murray v. Finster,* 2 Johns. Ch. 155; *Jewell v. Palmer,* 7 Johns. Ch. 65; *Halsee v. Halsee,* 8 Mo. 303. (2) The note having been given for part of the purchase money of the real estate, the title to which had failed to the extent of the interest of the minor son in the homestead, the consideration of the note entirely failed, as it represented the value of the interest of the minor son. Story on Prom. Notes [3 Ed.] sec. 187; *Rogers v. Mayes,* 84 Mo. 520; *Canole v. Hurt,* 78 Mo. 649. (3) Defendant was bound with constructive notice of all recorded instruments in the chain of title he was buying. *Scott v. McCulloch,* 13 Mo. 13; *Durette v. Briggs,* 47 Mo. 356; *Tyding v. Pitcher,* 82 Mo. 379; *Orrick v. Durham,* 79 Mo. 174. (4) The recitals in Dixon's deed to appellants informed Robinson that their assumption of this note was part of the consideration of that deed, and the covenant not to pay the same until 1892 were facts that would have put an ordinarily prudent man upon inquiry and fixed him with notice. Robinson read this deed. *Major v. Buckley,* 51 Mo. 227; *Ware v. Lord Egmont,* DeG., M. &. G.

460; *Meier v. Blume*, 80 Mo. 179; *Kingsland v. Drum,* 80 Mo. 646; *Cedar Co. v. Williams*, 79 Mo. 581; *Orrick v. Durham*, 79 Mo. 174; *Leavitt v. Laforce*, 71 Mo. 353. (5) The homestead proceedings were set out in the abstract Rowland made for Robinson, and he had actual notice by it of the interest of the minor child, but these proceedings were essential to make out his title, and the effect is the same whether they were recorded or not. *Johnston v. Gwathmey*, 4 Litt. (Ky.) 221; *Orrick v. Durham*, 79 Mo. 174. (6) Rowland, who conducted the negotiations resulting in the purchase of this note, had been the confidential agent of Robinson for years in similar transactions, had full knowledge that this note was for a part of the purchase money, and it is altogether improbable that he would withhold such history from his friend and confidante, but Robinson says he relied upon Rowland's assertions respecting the title; having so relied, he became bound by the knowledge which Rowland possessed. *Leavitt v. Laforce, supra; Meier v. Blume, supra.* (7) The restrictive endorsement of Edwards and wife, "pay to order of ————————, without recourse on us in law or equity;" the recital in deed of Dixon to appellants, "subject, however, to a mortgage in favor of Amanda E. Edwards for eight hundred dollars; due in the year 1892. \* \* \* The said mortgage is to run until the same becomes due;" the great length of time before the maturity of the note; the inadequate consideration he was paying; the notoriety in the neighborhood that there was something "shady" about the title, were sufficient to charge him as a purchaser *mala fides* of the note. *Edwards v. Thomas*, 66 Mo. 468; 1 Daniel Neg. Inst., sec. 795; *Cass Co. v. Green*, 66 Mo. 498. The denial of Robinson, after his purchase, of knowing anything about this note, as well as Rowland's indisposition to talk, coupled with the fact that the name of the assignee in the endorsement was left out, looked as though they were preparing in

advance for what subsequently happened, and likewise betrayed an inner consciousness that the title was not only "shady," but the transaction was "smoky," and a preparation in advance to put the title where it would be least vulnerable. *Cass Co. v. Green,* 66 Mo. 498; *Adams v. Adams,* 21 Wall 185; *Com. v. Webster,* 5 Cush. 295; *The People v. Wharton,* 4 Barb. 438. (8) The appellant did not become personally liable to pay the note by accepting a conveyance of the premises containing a recital that it was subject to a deed of trust securing it. *Heim v. Vogel,* 69 Mo. 535; *Swope v. Leffingwell,* 72 Mo. 356. (9) But Robinson says he relied on the title exclusively in making the purchase of the note; if so he is bound by every recital in that chain of title. This he must have done, for he agreed not to look to his endorsers, either in law or equity, and as we have seen, appellants were not personally liable on the note. Robinson is, therefore, to be treated as a purchaser of real estate, and the rules governing such purchasers, that circumstances which would put an ordinarily prudent man on inquiry amounts to notice should be applied *proprio vigore* to the transaction.

*O. L. Houts* for respondent.

(1) The answer is good. (2) The remaining contention of appellants is, that the finding was against the weight of the evidence. It is not manifest that the chancellor disregarded the evidence in the case, and this court will, therefore, defer to the finding, which was for respondent. *Sharpe v. McPike,* 62 Mo. 300; *Hodges v. Black,* 76 Mo. 537; *Snell v. Harrison,* 83 Mo. 651. (3) The finding was manifestly right under the evidence. "The possession of negotiable paper carries the title with it to the holder." "The party who takes it before due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by title valid against the whole world." "Suspicion of defect

of title or knowledge of circumstances which would excite such suspicions in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title. That result can be procured only by bad faith on his part." *Hamilton v. Marks*, 63 Mo. 167; *Johnson v. McMurry*, 72 Mo. 278. Plaintiffs purchased for value, before maturity, March 10, 1882; at that time the consideration had not failed. Appellants were in possession of the land, and were not dispossessed until June, 1882. At that time, then, the note was good, and the finding must have been for respondent. Respondent was not compelled to look out for signs of disease that might undermine the constitution of the note, in the future, and cause a failure of consideration; but if so, the evidence discloses no such signs. (4) Appellants, by their acts, are estopped from denying the consideration of this note in the hands of respondent. *Tayer v. Zepp*, 14 Mo. 482; Bigelow on Estoppel, 387; *Fitzgerald v. Barker*, 85 Mo. 13.

BRACE, J.—In March, 1873, James C. Rogers died, seized in fee of the one hundred and twenty acres of land described in the petition, leaving surviving him his widow, Sarah J., who afterwards intermarried with Fayette F. Payne, and one child, Thomas, aged about two years. In October, 1876, said real estate, in a proceeding in the probate court of Johnson county, in which county the same was situate, was set off to said widow and child as a homestead. On the second day of November, 1876, the said Sarah J. sold, for the consideration of fifteen hundred dollars, and, with her husband, conveyed by general warranty deed, said real estate to one Amanda E. Edwards. On the first of January, 1878, for the consideration of sixteen hundred and fifty dollars, the said Amanda E. Edwards sold, and, with her husband, conveyed, by general warranty deed, said real

estate to one Robert F. Dixon, who paid seven hundred and twenty dollars of the purchase money in cash, and for the remainder executed his two negotiable promissory notes, one for one hundred and thirty dollars, payable on or before the first day of November, 1878, the other for eight hundred dollars, in words and figures as follows, to-wit: "On or before the first day of January, 1892, and for value received, I promise to pay or cause to be paid to Amanda E. Edwards, or order, the just and full sum of eight hundred dollars, negotiable and payable without defalcation or discount, with interest at the rate of ten per cent. per annum, to be paid annually; in case of default in the payment of said interest the above note becomes due and payable, as witness my hand this first day of January, 1878. R. F. Dixon." And to secure the payment of said two negotiable promissory notes, the said Dixon, on the same day, executed a deed of trust in common form, with power of sale, to James R. Parrot, trustee.

The foregoing conveyances were all properly executed and acknowledged, and of record in Johnson county aforesaid, when, on the eleventh day of August, 1880, the plaintiffs, being in possession of an abstract of the title of said real estate, showing as well such conveyances as said proceedings of said probate court setting off said land as a homestead, and who, at that time, were acquainted with the said Thomas Rogers and his mother; knew that said land had been set off to them as a homestead, and that the said Thomas was a minor and the son of the said James Rogers, and that there was a controversy as to his interest in the land, purchased said real estate of said Dixon, who before that date had paid off the one hundred and thirty-dollar note, and the accrued interest on the eight hundred-dollar note to January 1, 1880, and fifty dollars of the principal thereof, paying said Dixon, as the consideration for said real estate, the sum of one thousand and fifty dollars in cash, and

assuming the payment of the remainder due on said eight hundred-dollar note, and received from him a warranty deed, "subject, however, to a mortgage in favor of Amanda E. Edwards for eight hundred dollars, due in the year 1892, the same being credited with fifty dollars," which deed was duly acknowledged and recorded on said eleventh day of August, 1880, and plaintiffs went into possession of the premises.

On the third of January, 1881, the plaintiffs paid the interest on said eight hundred-dollar note for 1880. On the twenty-fourth of November, 1881, Sarah J. Payne, the mother of Thomas Rogers, died. On the twenty-fifth of December, 1881, plaintiffs paid the interest on said note to January 1, 1882. At the February term, 1882, of the circuit court of Johnson county, the said Thomas Rogers, by his guardian and curator, instituted an action in ejectment against the plaintiffs to recover possession of the premises aforesaid. On the tenth of March, 1882, the defendant, being also in possession of an abstract of the title to said real estate, and after examining the chain of title, purchased said eight hundred-dollar note of the said Amanda E. Edwards, through her agent, Rowland, for the sum of five hundred dollars, and thereupon she and her husband assigned, by endorsement without recourse, and delivered said note to the defendant. At the June term, 1882, of the Johnson county circuit court, Thomas Rogers, by his guardian and curator, obtained judgment in his action in ejectment against the plaintiffs for the recovery of the premises, and for rents and profits, in the sum of two hundred dollars, with stay of execution to March 1, 1883. From this judgment, the plaintiffs appealed to the Supreme Court, where the judgment of the circuit court was affirmed at the October term, 1884, thereof. *Rogers v. Mayes*, 84 Mo. 520.

Pending said appeal, the plaintiffs commenced this action in the Johnson county circuit court by petition in the nature of a bill in equity, whereby they seek to have

said negotiable note cancelled, and to compel satisfaction of said deed of trust on the ground that, by reason of the existence and assertion of the right and interest of said Thomas Rogers in said real estate, whereby they have been deprived of the use and occupation of said real estate, and will continue to be so deprived until the first day of January, 1892, at which time said Thomas Rogers will arrive at the age of twenty-one years, the consideration of said note has failed, of which failure the defendant had full knowledge and notice at the time he purchased said note. The defendant joined issue upon the allegation in the petition, that he purchased said promissory note with notice of such alleged failure of consideration, and averred that he was the purchaser thereof for value before maturity in good faith, and upon this issue the case was tried, the issue found for the defendant, and judgment rendered in his favor, from which the plaintiffs appeal to this court, and seek a reversal on the ground that, on the pleadings and evidence, the judgment should have been for the plaintiffs.

Counsel for the plaintiffs concede that the note in question is a negotiable promissory note, and that the defendant purchased the same for value before maturity. The evidence in the case, as preserved in the record before us, fails to disclose that the defendant, at the time he purchased the note, had any knowledge of the consideration thereof except such as he might have derived from the note itself, its endorsements, the deed of trust, the record of the title of the real estate, and the abstract thereof, and whilst these could not have informed him of the failure of the consideration of the note, it is contended that they did disclose facts that would have put a reasonably prudent man upon inquiry, whereby he might have discovered other facts, that is, the existence of Thomas Rogers, his minority, the interest he had in the real estate, which asserted, caused, or might work a failure of the consideration of said note, and are sufficient

to charge the defendant with notice of those ultimate facts, and of such failure. The doctrine here invoked, sustained in *Hamilton v. Marks*, 52 Mo. 78, but inconsistent with the ruling in *Horton v. Bayne*, 52 Mo. 531, decided at the same term of court, was expressly repudiated when the case of *Hamilton v. Marks* again came before the court (63 Mo. 167), as being unsound in principle and against the weight of authority. Since then, it has been considered settled law in this state that the consideration of negotiable paper in the hands of a *bona-fide* holder for value before maturity cannot be inquired into. *Mala fides* alone can open the door to such inquiry. Gross negligence even is not sufficient: actual notice of the facts which impeach the validity of the note must be brought home to the holder. *Johnson v. Mc-Murry*, 72 Mo. 278.

If the question of notice in this case is to be determined by the rules applicable to under-due commercial paper, this contention cannot be maintained. It is contended, however, that the note was taken without recourse; that the defendant relied exclusively upon the security of the deed of trust in making the purchase and is bound by the recitals in the chain of title ; that the proceedings in the probate court, setting off the premises as a homestead, showing that Thomas Rogers at that time had an interest therein, were sufficient to put the defendant upon inquiry, and that, in this case, in determining the question of notice, the rules governing the transfer of commercial paper ought not to obtain, but that the defendant should be treated the same as if he were a purchaser of real estate. That the note was taken without recourse could not in any manner affect the rights of the *indorsee* against the *maker*.

Nor could the fact that the indorsee relied upon the security of the deed of trust, and not upon the solvency of the maker, vary the nature of the contract. The contract as to the note was that the maker should pay it at

maturity to any *bona-fide* indorsee for value before maturity, without respect to any defence to which it might have been liable in the hands of the payee. *Carpenter v. Longan*, 16 Wall. 271. The deed of trust was given to secure the performance of that contract. The rights of the parties are to be determined by the relation they sustain to the contract to be performed, and not by the nature of the security given for its performance. If the defendant took the note discharged of any equities to which it was subject in the hands of the payee, the deed of trust passed to him discharged of such equities to the same extent. *Logan v. Smith*, 62 Mo. 455. The deed of trust being incident to the note partook of the negotiability of its principal. *Hagerman v. Sutton*, 91 Mo. 519, and authorities cited. If the defendant was a *bona-fide* holder of the note for value before maturity, without notice, he was in equal measure such *bona-fide* holder of the deed of trust, and upon the evidence in the case the court was warranted in finding that the defendant was such *bona-fide* holder.

The judgment of the circuit court was for the right party, and is affirmed.