57 167
71 228

JAMES W. DODD, Appellant, v. ARTHUR W. LEE *et al.*, Respondents.

### St. Louis Court of Appeals, March 20, 1894.

1. **Lis Pendens**: EFFECT ON PURCHASE OF NEGOTIABLE NOTE SECURED BY MORTGAGE. The *bona fide* purchaser for value and before maturity of a negotiable promissory note, which is secured by a mortgage on land, will be affected by, and taken subject to, a statutory notice of *lis pendens* filed prior to his purchase, when such notice relates to an equity not between the original parties to the mortgage, but between a third person and the mortgagor.

2. ———: EFFECT ON PRIOR ESTOPPEL. The filing of notice of *lis pendens* will not impair the right of a person affected thereby to claim an estoppel by reason of the prior conduct of the party by whom the notice is given.

3. **Estoppel by Conduct**: INSUFFICIENCY OF EVIDENCE. The facts of this case are considered, and held not to amount to such culpable negligence on the part of the plaintiff as to create an estoppel against him.

*Appeal from the Marion Circuit Court.*—HON. THOMAS H. BACON, Judge.

REVERSED AND REMANDED *(with directions).*

*R. B. Bristow* and *J. T. Lighter* for appellant.

*W. M. Boulware* for respondent.

BIGGS, J.—This is an action in equity to subordinate the lien of one deed of trust to that of another. On the twenty-seventh day of November, 1888, the defendants, Ryan and Wilson, executed and delivered to the defendant, William R. Anderson, as trustee, a deed of trust on certain land in Marion county to secure an indebtedness of $900 due to the defendant, Lee. This debt was evidenced

by three negotiable notes for $300 each, signed by
Ryan and Wilson, payable to Lee or his order, dated
November 24, 1888, and due respectively in one,
two and three years. The deed of trust was filed
for record on the following day (November 28).
On the twenty-seventh of November Ryan and Wilson
also executed and acknowledged another deed of
trust on the same land to secure an indebtedness of
$1,500 due from Ryan and Wilson to the plaintiff,
which was represented by three notes for $500 each,
due respectively in two, three and four years. This
deed of trust was filed for record on the fifth day
of December, 1888. On this last mentioned day the
present suit was commenced against Lee, Wilson,
Ryan and Anderson, and notice of *lis pendens* was
filed on the same day at 11 o'clock A. M. It
was claimed by the plaintiff that his deed of trust
represented the purchase money for the land; that
it was understood and agreed between him and Lee
that the plaintiff's deed of trust was the first and
only lien; and that the preference secured by Lee
by filing his deed of trust first was fraudulent. It
appearing that the defendant, J. P. Richards, claimed
to have purchased the Lee notes, he was afterwards
made a party defendant. He answered that he had
bought the Lee notes on the afternoon of the fifth
of December, 1888, and that he purchased them in
good faith for full value and without any notice of
plaintiff's alleged equities; wherefore he claimed that
his superior legal rights under the Lee mortgage ought
not to be disturbed. He asked that both deeds of
trust be foreclosed, and that his debt be first paid,
and the remainder applied to the discharge of the
plaintiff's debt. The court found the issues in favor of
Richards, and decreed a foreclosure of both deeds
of trust and that out of the proceeds of sale Richards

be first paid, and the residue be applied to the discharge of plaintiff's debt.    The plaintiff has appealed.

We find the following to be the facts: In March, 1886, one Fisher, being the owner of the land in controversy, executed a deed of trust thereon, to B. O. Wood, as trustee, for the purpose of securing two notes for $1,000 each held by Lee.  On the first day of April, 1886, Lee borrowed of the plaintiff $1,500, for which he gave his note.  To secure it, he assigned to plaintiff the Fisher notes.  Fisher having defaulted in payment of interest, Wood at the request of plaintiff advertised the land for sale under the deed of trust, and on the twenty-eighth day of November, 1887, he sold it to the plaintiff for $1,275. No trustee's deed was executed by reason of an agreement between plaintiff and Lee, that the latter should have an opportunity to find a purchaser at a sufficient advance to pay the plaintiff the amount of his debt. About the twenty-fourth of November, 1888, Lee represented to plaintiff's attorney that the defendants Ryan and Wilson would buy the land, provided the plaintiff would accept three notes, aggregating $1,500 secured by a deed of trust on the land, Lee to pay the remainder of his debt in cash. The proposition was accepted, and the attorney drew up the notes and deed of trust and gave them to Lee.  On the twenty-seventh of November Lee had Ryan and Wilson to execute all of the notes and both deeds of trust, the purchase price of the land being $2,400.  By direction of the attorney, plaintiff's notes and deed of trust were delivered to one Turner, who mailed them to the attorney at Monroe City in an adjoining county. Lee filed his deed of trust for record on the next day. On the third day of December Lee went to Monroe City to close up the business.  He paid the balance

due on his debt, and the plaintiff's attorney, believing that his client's mortgage was the first and only lien on the land, directed Wood, the trustee, to execute the trustee's deed to Ryan and Wilson, which he did. The deed recited that Ryan and Wilson were the purchasers at the sale for $1,500 and that the purchase price had been paid. This deed and the plaintiff's deed of trust were delivered to Lee, who agreed to file them for record. He filed the trustee's deed, but withheld the deed of trust. When the trustee's deed was filed, he procured an abstract of the title from the recorder, which showed title to Ryan and Wilson, and his deed of trust as the only incumbrance. He tried to sell the notes to one or two parties, representing that his deed of trust was the only incumbrance on the land, and the plaintiff's attorney, hearing of this, went to Palmyra, the county seat of Marion county, to examine the records. An examination revealed the deception that had been practiced by Lee. Thereupon this suit was filed and a notice of *lis pendens* filed in the recorder's office. On the same day, Richards began negotiations for the purchase of the notes from Lee, but the sale was not consummated until the next morning. He bought on the faith of the abstract, and without notice of any fraud by Lee.

The determination of the question presented by the record involves the construction and application of our *lis pendens* statute. Section 6759 of the Revised Statutes of 1889 reads: "In any civil action, based on any equitable right, claim or lien, affecting or designed to affect, real estate, the plaintiff shall file for record, with the recorder of deeds for the county in which any such real estate is situated, a written notice of the pendency of the suit, stating the name of the parties, the style of the action and the term of the

court to which such suit is brought, and a description of the real estate liable to be affected thereby; and the pendency of such suit shall be constructive notice to purchasers of incumbrances, only from the time of filing such notice. The recorder shall note the time of receiving such notice, and shall record and index the same in like manner as deeds of real estate are required to be recorded and indexed.''

Similar statutes exist in most of the states, and they doubtless originated from the English statute on the subject. 2 and 3 Vict. (1839), ch. 11, sec. 7. The object of that statute, as stated by Mr. Bennett in his treatise on the law of *lis pendens* (p. 349), was probably ''to remedy the difficulty arising from the practice, which had existed more or less before that time, of issuing the subpœna in chancery before the bill was filed, procuring service of it and thus creating *lis pendens* before there was anything on the record to show what the suit was about.'' As to the proceedings and kinds of action mentioned the statute provides the only method of creating *lis pendens*. In this respect only has the law of *lis pendens* been changed.

· The doctrine of *lis pendens* is that, where a suit is instituted which affects the real estate or personal property (with some exceptions), the *res* will in nowise be affected by transfers *pendente lite*, that is after the notice of *lis pendens* is in force. Such purchasers or transferees, as a general rule, take the property subject to whatever decree there may be made in the pending suit. The doctrine is founded not on the idea of constructive notice, but on an imperative rule of public policy, the enforcement of which is necessary in most cases to the proper administration of the law; for otherwise there would be no end of litigation. *Turner v. Babb*, 60 Mo. 342; *O'Reiley v. Nicholson*, 45 Mo. 160.

It is essential to the existence of a valid and effect-, ive *lis pendens* that the property should be of a character subject to the rule. For instance, there can be no *lis pendens* as to unmatured negotiable instruments. The reason is that the rule of public policy, which is the foundation of the law of *lis pendens,* is met and overthrown by another and more important rule of commercial policy, that is, the absolute protection of *bona fide* purchasers or transferees of negotiable instruments against secret equities or infirmities as to title. *Carr v. Lewis Coal Co.*, 96 Mo. 157. From this standpoint counsel for Richards persuasively argues that, as a mortgage is a mere incident to the debt, it ought, under like circumstances, be protected against the operation of the rule of *lis pendens.* While it may be conceded that a well regulated commercial policy would require the adoption of the rule *(Carpenter v. Longan,* 16 Wall. 271), the position is untenable under the decisions of the supreme court of this state. Some expressions in the opinions in the cases of *Hagerman v. Sutton,* 91 Mo. 519, and *Mayes v. Robinson,* 93 Mo. 114, seem to support the contention; but the more recent case of *Patterson v. Booth,* 103 Mo. 402, expressly decides that a *bona fide* indorsee of unmatured negotiable paper, which is secured by a mortgage, takes the mortgage *free only* from existing equities between the original parties. In *Logan v. Smith,* 62 Mo. 455, the court expressly decided that the mortgage is not negotiable.

The fact, that the *lis pendens* notice was properly filed before Richards bought the notes, can not be denied. Neither can it be denied that Richards bought on the faith of the abstract, without actual notice of the pendency of the plaintiff's suit. Nevertheless, under the undisputed evidence, as applicable to the law of *lis pendens,* the mortgage of Richards must be held

subordinate to that of the plaintiff, unless the plaintiff, by his acts and conduct, is estopped as against Richards from asserting this priority.

The plaintiff's claim of priority can only be enforced on the ground, that the notes held by him represent the original purchase money of the land when sold by Wood, and that the notes held by Richards represent the excess which Lee obtained under the privilege granted him of a resale. It is insisted by Richards that in equity and good conscience the plaintiff ought to be estopped from proving this, for the reason that he caused Wood to execute the trustee's deed to Ryan and Wilson, in which it was recited that they were the purchasers at the trustee's sale, and that they had paid the entire purchase money; and that, afterwards, he caused said deed to be placed on record, thus enabling Lee to procure the abstract showing title in Ryan and Wilson and that the mortgage held by Lee was the only incumbrance on the land.

On the other hand the plaintiff insists that, as his equities against Lee are clear and undisputed, they must be enforced against Richards who bought after the notice of *lis pendens* had been filed, and that the previous acts and conduct of the plaintiff present an immaterial inquiry. This position can not be defended, for the reason above stated, that the law of *lis pendens* exists and is enforced not by reason of a legal presumption of notice but upon grounds of public policy. *Turner v. Babb, supra; Herrington v. Herrington*, 27 Mo. 560. In the latter case Judge RICHARDSON said: "The policy on which the doctrine of *lis pendens* is founded, is to give full effect to the judgment which might be rendered in the suit depending at the time of the purchase." In *Turner v. Babb, supra*, the court said: "The doctrine of *lis pendens* is not upheld so much on the grounds of the publicity of legal proceedings, and

a legal presumption of notice, arising from a supposition that people are attentive to what passes in courts of justice, as has been sometimes stated, as it is upon grounds of public policy and general convenience. Nor can it be claimed to be an equitable rule merely. Its existence and maintenance are necessary to any effectual administration of the law." It is upon this construction of the law that *bona fide* transfers of unmatured negotiable instruments are not brought within its operation. This could not be, if the law was enforced on the theory of constructive notice. Therefore, while it is not within the power of parties to a suit to deprive the court of jurisdiction of the *res* when it has once attached, it does not necessarily follow that the plaintiff in the litigation may not as against innocent third parties be estopped from availing himself of the protection of his *lis pendens* notice. The case of *Miles v. Lefi*, 60 Iowa, 168, presents such a question. That was a suit by the plaintiff against the defendant to recover the value of two horses. The defendant had a chattel mortgage on the horses, and he commenced foreclosure by published notice of sale. The mortgagor enjoined the sale. He gave the sureties on his injunction bond a mortgage on the horses. Pending the injunction suit the sureties took possession under their mortgage and foreclosed it by publicly selling the horses and other property embraced in the mortgage. The defendant was present at this sale and made no objection. The plaintiff bought the horses at the sale. Before buying, he talked with the defendant about the horses. The defendant told him that he knew the horses, and that they would suit him. The defendant also purchased some other property at the same sale. Afterwards the injunction was dissolved, and judgment entered in favor of the defendant with directions for a special execution against the mortgaged property. The

execution was issued and the horses taken from the plaintiff and sold. The defendant became the purchaser. The court held that the plaintiff was estopped by his silence and conduct from asserting a claim to the horses, and that it could make no difference whether he claimed as prior mortgagee or as a purchaser at the execution sale. This decision is made to rest on the equity principle stated by Lord DENHAM, C. J., in *Gregg v. Wells*, 10 Ad. & Ell. 90, that "a party, who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict, can not afterwards dispute that fact in an action against the person whom he has himself assisted in deceiving." This principle we think is of universal application.

The case at bar is one of peculiar hardship all around. By the clever manipulations of a swindler a probable loss has occurred. The question is, who must bear it, the plaintiff or Richards. When we first considered the case, a majority of the court were of the opinion that the equities in favor of Richards were such that the judgment of the circuit court ought to be affirmed. A re-examination of the question has induced us to recede from that view. Our conclusion is that the evidence falls short of establishing an estoppel against Dodd.

The recital in the trustee's deed from Wood to Ryan and Wilson that all of the purchase money had been paid, when in fact it had not been paid, was not unusual or calculated to mislead. It is almost the universal practice for deeds to contain such recitals, whether the purchase money has been paid or not. Hence the plaintiff can not be charged with neglect on that score. Under the circumstances the plaintiff was negligent in appointing Lee as his agent to attend to the recording of the trustee's deed and deed of trust,

but the negligence was passive rather than active. If plaintiff had known that Lee held a second deed of trust, then the act of appointing him agent would have been culpable negligence on the part of the plaintiff. But the plaintiff did not know this. He probably had good reason to believe that Lee had sold the land for a sum in excess of the plaintiff's notes, but there is nothing in the record to show that he knew that the excess had not been paid in cash. Besides, the evidence shows that upon the discovery of the fraud practiced by Lee the plaintiff acted promptly. He immediately instituted this suit, and filed the *lis pendens* notice. On the other hand, Mr. Richards was not as careful as he might have been, although any prudent business man would likely have bought the notes on the faith of the abstract without making further inquiries.

Our conclusion is that Richards, being a purchaser *pendente lite* of the Lee mortgage, must occupy the place of Lee in this litigation. The plaintiff's equities against Lee clearly appearing, the judgment of the circuit court must be reversed and the cause remanded, with directions to enter a decree adjudging the plaintiff's deed of trust to be the prior incumbrance; that it be foreclosed, and that the proceeds of sale, after paying the costs of sale, be first applied to the discharge of plaintiff's debt, and that the remainder (if any) be paid to Richards. All the judges concur.