M. J. PAYNE, as Executor of the Estate of WILLIAM MOREHEAD, Deceased, Appellant, v. THOMAS S. CUMMINS et al., Respondents.

Kansas City Court of Appeals, April 4, 1921.

1. **BILLS AND NOTES: Negotiability: A Notation on Note that it was Given to Secure Difference between $15,000, and $13,820, did not Destroy Negotiability.** A notation made upon the margin of a promissory note that it was given to secure the difference between $15,000 and $13,820, did not destroy its negotiability under section 788, Revised Statutes 1919, specifying the requirements thereof.

2. **WORDS AND PHRASES: ''Secure'' Defined.** To "secure" as used in notation on promissory note means to make secure, protect or free from danger, risk or hazard, to make safe.

3. **BILLS AND NOTES: Notice: Infirmity in Instrument or Defect in Title: Actual Notice Thereof Must be Brought Home to Holder: Rule as to Mere Information Putting One on Inquiry Does not Apply.** Under section 842, Revised Statutes, 1919, to constitute notice of infirmity in instrument or defect in title of person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith, and such actual notice must be brought home to holder, as the rule concerning notice through mere information, putting one on inquiry, does not apply to commercial paper.

4. **JUDGMENT: Jurisdiction: Res Adjudicata: Judgment on Issue Between ''Parties'' and Privies Conclusive, Though Subject-matter May be Different.** Where the court has full jurisdiction over the parties, the *res* of the case which was a note, and of the question whether it was given for a debt maker owed, or merely as indemnity against an incumbrance on property sold, the judgment of the court is conclusive, not only as to *res* of case, but as to all further litigation between the same parties or their privies, touching the same issues even though the *res* may be different, the term "parties" not being restricted to those who appear as parties on the record but includes all who have a direct interest in the subject-matter of the suit, the right to make a defense, or control the proceedings.

Appeal from the Circuit Court of Adair County.—*Hon. J. A. Cooley*, Judge.

REVERSED AND REMANDED (*with directions.*)

*J. W. Clapp, C. E. Murrell* and *D. M. Wilson* for appellant.

*Calfee & Painter, Campbell & Ellison* and *J. M. Wattenbarger* for respondent.

TRIMBLE, P. J.—In this case the indorsee of a promissory note brought suit thereon against the makers. Verdict and judgment went for defendants and plaintiff has appealed.

The note was on an ordinary printed blank form, the blanks being filled in with a typewriter and was signed by defendants, and, as so signed, reads as follows:—

"$1183.        Milan, Mo., March 11th, 1915.

"March 1st, 1918, after date, we promise to pay to the order of Daniel O. Sayre, Eleven Hundred Eighty-three dollars, For value received, with interest at the rate of six per cent per annum from March 1, 1915, and if the interest be not paid annually, to become as principal and bear the same rate of interest.

"This note is negotiable and payable without defalcation or discount, and without any relief or benefit whatever from stay, valuation, appraisement, or homestead exemption laws.

THOMAS S. CUMMINS,<br>MRS. W. B. PAYNE."

. Below the signatures, and on the margin of the note, these words appear, written in lead pencil: "Given to secure the difference between $15000 and $13820." On the back of the note are the following indorsements:—

"D. O. Sayre

Paid $72.11, being interest to March 1, 1916.

December 9, 1916, paid $130.40 by T. S. Cummins

24c. Documentary Internal Revenue Stamps."

Defendants, in their joint answer, said they signed the note, Cummins as principal and Mrs. Payne as surety; and they then set up that the note originated, in an exchange of lands between Cummins and Sayre, the payee in the note, in the following manner: That on Cummins farm were deeds of trust aggregating $15000 of which $1000 was given by Cummins to Mrs. Payne, his co-defendant, to indemnify her for having signed, as a surety for him, his note of $1000 to America and Lindsay Pile; that Sayre's farm had encumbrances on it amounting to $2800, that the parties trading each agreed to assume the incumbrance on the farm he was to get, except that Sayre assumed only $14000 of the incumbrance on the Cummins farm, but the $1000 indemnity incumbrance given to Mrs. Payne was still on said farm and it was agreed that, to protect Sayre from this $1000 incumbrance, Cummins and Mrs. Payne, who was Cummins' sister, would execute the note sued on herein to Sayre to indemnify him against the $1000 Payne indemnity note; and that included in the note sued on, was $153 additional which Cummins owed Sayre on another matter; that as a part of said agreement it was understood and agreed that the words, "Given to secure the difference between $15000 and $13820" should be written thereon, and were written upon said note at the time of its execution; that said note had no other or further consideration, and afterwards Cummins paid the $153 he owed, together with interest thereon, and further paid an additional $30, with interest thereon, and thereafter paid off the Pile note on which Mrs. Payne was his surety, thereby relieving the land Sayre got of the $1000 indemnity Payne incumbrance, so that the note sued on herein, being given to protect Sayre from said indemnity Payne incumbrance of $1000, was paid in so far as it covered the $153 debt owed by Cummins to Sayre, and was no longer of vital force or efficacy so far as concerned the indemnity against the Payne surety incumbrance.

To this, plaintiff filed a reply setting up that the words, "Given to secure the difference between $15000 and 13820," appear on the note written in lead pencil and below the signatures, while the rest of the blanks in the note were in typewriting. The reply then denied every other allegation in the answer.

The reply then pleaded *res adjudicata* as to the claim set up in the answer, and stated that on March 28, 1917, defendant Cummins, as plaintiff, brought a suit in the Circuit Court of Sullivan County against Sayre, alleging that he and Sayre had traded farms; that on the Cummins farm, traded to Sayre, were incumbrances aggregating $15000 of which Sayre agreed to assume $13820, and Cummins was to pay the difference between $15000 and $13820, and, to protect Sayre and the land traded him, Cummins executed and delivered to Sayre the $1183 note (which is the same note sued on in this suit), to indemnify Sayre against Cummins' failure to perform said agreement to pay off the aforesaid difference between the incumbrance of $15000 on the land Sayre got and the $13820 which he assumed; that afterwards Cummins paid on said note the sum of $183 with interest and obtained the release and discharge of a $1000 deed of trust on the land Sayre got; wherefore the plaintiff therein (Cummins), prayed the court to order and decree that Sayre return and deliver the $1183 note to him, and if for any reason Sayre could not turn said note over, then the plaintiff Cummins prayed for judgment against Sayre in the sum of $1183 and for costs.

Plaintiff's reply, in the case now before us, further set up that in the aforesaid Cummins suit against Sayre, the latter filed an answer denying generally the allegations of Cummins' petition and then alleged that he, Sayre, traded 80 acres at $75 per acre for Cummins' 202 acres at $80 per acre; that he, Sayre, assumed $14000 of the deeds of trust on the land he was getting from Cummins and the latter assumed the $2800 incumbrance on the land obtained from Sayre, and the latter deeded his equity in his 80 to Cummins at $3200; that in addition

thereto Cummins owed him, Sayre, $153 for stock pur-
chased by Cummins at Sayre's sale; that Sayre owed
Cummins $16,160 for his 202 acres and Cummins owed
Sayre the $14000 incumbrance (assumed by Sayre), the
$3200 equity in the Sayre land and the $153 for stock
bought, making the amount Cummins owed Sayre ag-
gregate $17,353 which after deducting the $16,160 owed
him, left a difference of $1193 owed by Cummins to
Sayre, and that the note in controversy (which is the
same note sued on in this case), was given to cover that
difference, but by an oversight or mistake the note was
drawn for $1183, or ten dollars less than it should have
been.

Plaintiff's replication in the case at bar further set
up that in Cummins' replication as plaintiff in the other
suit, he admitted he was to take Sayre's land at $75 per
acre; that he owed the $153 and that he assumed the
$2800 incumbrance on the land he got from Sayre, but
denied everything else.

Plaintiff, in his replication in the case at bar, then
set up that a trial was had on the issues thus raised in
the Sullivan Circuit Court between Cummins and Sayre,
at which the defendant, Mrs. Payne, appeared and testi-
fied as a witness and, during its pendency, consulted and
advised with Cummins the plaintiff therein and his at-
torneys in regard thereto; that on the 5th day of Sep-
tember, 1917, the court rendered judgment *for the de-
fendant Sayre* in that suit, and it was not appealed.
Plaintiff in the present case, therefore, pleaded the
judgment in the other case as *res adjudicata* of the issues
set up and attempted to be raised in defendants' answer
in this case. Plaintiff further pleaded that he bought
the note sued on, in good faith without notice and before
maturity, paying full value therefor.

There is no question but that plaintiff bought, and
paid full value for the note in controversy on September
7, 1915, long before the maturity of the note; and that
he had no notice of any equities which defendants now
claim exist in their favor against the same, unless the

pencil notation on the note can be said to impart such notice. The evidence is that when Sayre sold plaintiff the note he told plaintiff he and Cummins had traded farms and the note was given for the difference between them in the trade. Plaintiff asked who else was on the note and, when told Mrs. Payne was, he agreed to buy it. Nothing was told him which would in any way charge him with notice of any equities between the parties to the note, and there is no evidence of any collusion or fraud on the part of plaintiff with respect to the acquirement of the note. Unless, therefore, the above mentioned pencil notation did impart notice of the alleged equities claimed by defendants, or destroyed the negotiability of said note, the plaintiff occupies the position of an innocent holder for value and before maturity. The two questions, therefore, arising on this appeal are: Was the note negotiable, and are the issues raised in defendants' answer *res adjudicata* by reason of the judgment is Sayre's, the payee's, favor in the Circuit Court of Sullivan county, which judgment was never appealed from? If either of these questions be answered in the affirmative then judgment should go in plaintiff's favor. The circuit court ruled both of these contentions against plaintiff and submitted to the jury the question of whether the note in suit was given as a mere indemnity against the $1000 indemnity incumbrance to Mrs. Payne, as defendants claim, or whether it represented the difference Cummins owed in the trade of the two farms, as Sayre claims and testified it did. The defendants' claime is that the trade between Cummins and Sayre was on a basis of $85 per acre for Cummins' land instead of $80 per acre as Sayre claims. According to this, Sayre owed $17,160 for the Cummins land of which amount he paid, by assumption, $14000, leaving Sayre still owing Cummins $3160 for the Cummins land. But Cummins owed Sayre $6000 for the Sayre land, of which Cummins paid, by assumption, $2800, leaving Cummins owing Sayre $3200. Offsetting this $3200 with

the $3160 Sayre owed Cummins, left Cummins still owing Sayre $40 and this added to the $153 he admittedly owed for stock, made $193 which with the $1000 (which Cummins says was on the land as a mere indemnity to Mrs. Payne in case she had to pay the Pile note), made $1193, being the same amount for which Sayre says the note should have been.   The difference then between Sáyre's and defendants' contention   is over whether the Cummins land was traded at a valuation of $17,160 or $16,160; or, in other words, whether the $1000 of the note sued on represents real difference in money between the two farms or whether it represents merely a security to Sayre against the indemnity incumberance given to Mrs. Payne as surety on the Pile note?

It will be observed that, even upon defendants' claim, $30 of the note as actually made (or $40 as it should have been drawn), was difference in value of the lands, since $1000 and $153 only make $1153; but it seems that defendant Cummins paid this $30, and hence the fact of this $30 payment does not, in itself, discredit defendants' claim as plaintiff suggests in his brief.  But, however this may be, there was evidence for and against the respective contentions over whether the note was for a real difference in value òf the two farms in the trade or whether it was given as a mere indemnity against the incumbrance held by Mrs. Payne as indemnity as security on the Pile note.  And if both of the two questions hereinbefore mentioned were correctly decided in defendants' favor, then the verdict of the jury in defendants' favor cannot be disturbed.

We are unable to see how the notation on the note destroyed its negotiablity.   Section 788, Revised Statutes 1919, specifying the requirements of negotiability reads: "(1)  It must be in writing and signed by the maker or drawer; (2) must contain an unconditional promise or order to pay a sum certain in money; (3) must be payable on demand, or at a fixed or determinable

future time; (4) must be payable to order or to bearer.''

The note in controversy complied with every one of these requirements. It was in writing, signed by the makers, contained an unconditional promise to pay a sum certain in money at a fixed future date to the order of the payee therein named. The only function which the notation thereon can be reasonably held to perform is that, taken in connection with what Sayre told plaintiff, it gave the latter notice of the transaction which gave rise to the instrument, namely the trade between them of their farms. But, by section 790, Revised Statutes 1919, ''An unqualified order or promise to pay is unconditional within the meaning of this chapter *though coupled with* . . . a statemen to the transaction which give rise to the instrument.''

Defendants, however, say that the word ''secure'' in the notation rendered the unconditional promise stated in the note a conditional one since it shows that the payment was to be on a contingency, and by section 791, Revised Statute 1919, an instrument ''payable upon a contigency is not negotiable.'' We do not think the negotiability of a promissory note, and the consequent rights of a holder for value before maturity without notice, should hang by so slender a thread. The parties to both transactions, including plaintiff himself, were laymen, not professional men, and would neither use nor understand the word in any strictly techinal sense, but would take it in its usual and ordinary acceptation. To ''secure'' means ''To make secure, protect or free from danger, risk, or hazard; make safe.'' [New Standard Dictionary.] Mrs. Payne, by putting her name as surety to the note, did make safe, secure and certain the payment of the money therein unconditionally promised to be paid. Again, as to the part thereof which Cummins conceded he owed, the word ''secure'' can only have the meaning above mentioned and which is ordinarily and usually attached to it. So that, even according to defendants' contention, the word, at best, is used in two senses; and if defendants wanted to make it plain that

they were using it in the sense they now contend for,
how easy it would have been to state the facts and to
have stricken out the unconditional feature of the prom-
ise and also the statement that "This note is negoti-
able." Instead of doing this, the note was written as
above shown and delivered to Sayre instead of being
placed in other hands to be held until the contingency
arose, if the facts be as defendants claim. It would seem
that, if such was the case, then by drawing the note in
this form and delivering it to Sayre, thus placing it in
his power to impose on some third person who is un-
acquainted with the facts, the parties who thus negligent-
ly brought about that situation, should be the ones to
suffer rather than the innocent third party. [Neuhoff
v. O'Reilly, 93 Mo. 164.] At least they are not entitled
to such a construction as they claim of the word "se-
cure" in the notation unless it unquestionably calls for
that construction and can admit of no other reasonable
interpretation.

Defendants contend that the notation was sufficient
to put plaintiff upon inquiry which, if he had pursued he
would have learned the true facts. But section 842, Re-
vised Statutes 1919, of the Negotiable Instruments law
provides that to constitute notice of infirmity in the in-
strument or defect in the title of the person negotiating
the same, the person to whom it is negotiated "must have
had actual knowledge of the infirmity or defect, or knowl-
edge of such facts that his action in taking the instru-
ment amounted to bad faith" and the rule of our de-
cisions prior to that was and is that actual notice must
be brought home to the holder, and that the rule in
other matters as to notice through mere information put-
ting one on inquiry which it followed would lead to the
ascertainment of the trust, does not apply to commercial
paper. [Jennings v. Todd, 118 Mo. 297; Hamilton v.
Marks, 63 Mo. 167; Mayer v. Robinson, 93 Mo. 114.] We
are of the opinion that the notation on the margin of the
note did not destroy its negotiability. [Howard Company
v. International Bank, 198 Mo. App. 284; Siegel v. Chica-

go-Trust Company, 7 L. R. A. 537; Duckett v. National Mechanics Bank, 39 L. R. A. 84; State National Bank, v. Dodge, 124 U. S. 33; Farmer v. First National Bank, 89 Ark. 132; Phelps, etc., Co. v. Honeywell, 53 Pac. 488; Choate v. Stevens, 43 L. R. A. 277.]

The court, therefore, erred in holding that the note's negotiability was destroyed, and in overruling plaintiff's contention and objection based on the negotiability thereof.

It would seem also that the issue sought to be raised by the defendants in their answer was *res adjudicata* by reason of the judgment rendered in the suit by defendant Cummins against Sayre. There is no question but that the facts were as alleged in plaintiff's plea of *res adjudicata*. The note involved in that case is the note in this one. The facts relied upon by Cummins as plaintiff in that case are the very same facts set up by defendants in this one and the *issue* involved therein, and the *only* one, was the indentical issue raised as a defense in this, namely, whether the note was for a real difference in value in the trade or was a mere indemnity against the Payne security incumbrance. Sayre in that case maintained the former, and Cummins and Payne maintained the latter. The judgment was for Sayre and no appeal was ever taken. There was no issue over whether Mrs. Payne executed the note; that was conceded in both cases. The Sullivan Court had full jurisdiction over the parties and over the *res* of that case which was the note in question here and whether it was given for a debt Cummins owed or merely as indemnity against the Payne incumbrance; and its judgment is conclusive not only as to the *res* of that case, but as to all further litigation between the same parties, or their privies, touching the same issues even though the *res* may be different. [Beloit v. Morgan, 7 Wall. 619.] The term "parties" is not restricted merely to those who appear as parties on the record but includes all who have a direct interest in the subject-matter of the suit, the right to make a defense, or control the pro-

.ceedings. [State to use v. Coste, 36 Mo. 437, 348; Chicago v. Robins, 2 Black 418.] Mrs. Payne's own testimony shows she knew of the suit, was a witness and and testified therein, and consulted and advised with the attorneys for plaintiff in that suit. Plaintiff in this case is privy to Sayre and the sole issue in that case is the sole defense raised in this. So that it would seem that such issue was *res adjudicata*. [Chouteau v. Gibson, 76 Mo. 38; Henry v. Wood, 77 Mo. 277, 280; Murphy v. DeFrance, 101 Mo. 151; State ex rel. v. St. Louis, 145 Mo. 551, 567.] The final decree in the equity suit in Sullivan County is as binding as a judgment in a court at law. [Donnell v. Wright, 147 Mo. 639.]

In view of the foregoing, the judgment must be reversed and the cause remanded with directions to enter up judgment in plaintiff's favor on the note sued on. It is so orderd. All concur.