CASS BANK AND TRUST COMPANY, A CORPORATION, APPELLANT, v. FRED GREENWALD, DOING BUSINESS AS OAKVILLE MOTOR COMPANY, RESPONDENT.*—29 S. W. (2d) 209.

St. Louis Court of Appeals. Opinion filed June 13, 1930.

*Corpus Juris-Cyc. References: Bills and Notes, 8CJ, section 220, p. 126, n. 16, 17; section 730, p. 519, n. 61.

*Rassieur, Long & Yawitz* for appellant.

*George F. Heege* for respondent.

SUTTON, C.—This is an action on a trade acceptance. The trial, with a jury, resulted in a judgment for defendant, and plaintiff appealed.

Since the perfecting of the appeal the Cass Bank & Trust Company, as successor to the Cass Avenue Bank, plaintiff below, has been substituted here as party appellant in place of said Cass Avenue Bank, hereinafter referred to as plaintiff.

The acceptance is for the sum of $399.90, and is payable to Boyce & Ohm. It is dated June 1, 1925, and was accepted by defendant on June 3, 1925. It was purchased by plaintiff from Boyce & Ohm for $393.90, and was transferred to them by endorsement, on June 4, 1925. It was given for the purchase price of one tractor, one riding sulkey, one ten inch plow with cultivator attachments, one large disc, and one pair of hilling shovels.

As a defense to the acceptance defendant charges in his answer that contemporaneous with the signing of the acceptance by him he entered into a contract with Boyce & Ohm, whereby he purchased the tractor and equipment for the price of $399.90; that said purchase was subject to demonstration; that after the execution of the acceptance the tractor and equipment was shipped to him and demonstrated, and proved to be unsuited, and was rejected by him; that he notified Boyce & Ohm that he would not pay the acceptance; that the consideration for the acceptance wholly failed; that plaintiff had actual knowledge of said contract and of said facts; that the act of plaintiff in taking said acceptance amounted to bad faith.

Appellant complains here of the refusal of the court to give a peremptory instruction directing a verdict for plaintiff for the amount of the acceptance sued on, with interest.

Defendant testified that on June 1, 1925, he was doing business as the Oakville Motor Company, at Oakville, in St. Louis County; that he purchased the tractor and equipment from Boyce & Ohm through their salesman; that the tractor was delivered to him by the salesman on the morning of May 23, 1925, and that the rest of the equipment was delivered to him later, at his place of business in Oakville; that the salesman and Mr. Boyce both came out to his place of business on a truck, with the rest of the equipment; that they did not have any plow to demonstrate the tractor with; that at that time the accepance in suit was presented to him; that when it was so presented there were papers attached; that Mr. Boyce at that time gave him the acceptance and had him sign it; that later on a demonstration was made of the tractor, and that it would not work with the plow they had brought along; that it did not work; that after the acceptance was signed and after this demonstration, he refused to accept the tractor; that the demonstration was made the next day after

the acceptance was signed; that the salesman told him that if the tractor did not work satisfactorily he would not have to accept it; that he left the tractor there that day and came back several days afterwards; that he did not know what day it was he came back, but that it was some time in June; that the acceptance was signed after June 1st; that he did not know just the day but it wasn't on June 1st; that the tractor was in his garage from May 23rd up to the time he signed the acceptance; that the salesman had taken it out of the garage and was connecting up the machinery on it when he signed the acceptance; that he signed it without seeing a demonstration of the tractor, and that the tractor was sold subject to demonstration; that he did not know exactly when the tractor was demonstrated; that it was not demonstrated on June 3rd; that it was demonstrated two or three weeks after that; that they came out and demonstrated it, but they did not demonstrate it on June 4th.

The papers referred to by defendant in his testimony as having been attached to the acceptance when he signed it, consisting of two sheets pinned together, were introduced in evidence. The first sheet is an order for the tractor and equipment. It is dated May 23, 1925, and is signed by defendant. It directs Boyce & Ohm to ship to him at Oakville, Missouri, the tractor and equipment, "subject to demonstration." The second sheet is an invoice, setting forth the items of machinery sold, with the prices charged therefor, aggregating $399.90. It states that the tractor and equipment itemized is sold to defendant, "subject to demonstration" and states the "terms" thus: "Trade acceptance, ninety days." It is dated May 23, 1925, and indicates that the tractor and equipment invoiced were "shipped" on that date. The testimony does not show in what manner these papers were attached to the acceptance when defendant signed it.

The evidence for plaintiff shows that it took the acceptance by endorsement, without any knowledge of any infirmity in the acceptance or of any existing defense thereto, and without any knowledge of any facts tending to show bad faith on its part, and there was no evidence on the part of defendant showing such knowledge.

Defendant contends, however, that the testimony of plaintiff's cashier shows knowledge on his part of the facts impeaching the validity of the acceptance. The testimony relied on by defendant, is substantially as follows: "I personally bought the acceptance for the bank from Boyce & Ohm, paying them $393.90 for it; there was nothing attached to the acceptance when I bought it; they had the bill there of what they sold and what it was for; there was nothing attached to the acceptance; all I know is that they had the bill there showing what they sold."

Defendant contends that this testimony shows that the cashier had knowledge of the contract of sale between defendant and Boyce &

Ohm, stipulating that the tractor and equipment were sold subject to demonstration, and that this amounted to knowledge of the facts impeaching the validity of the acceptance. We are unable to agree with this view. If we assume that the papers exhibited to the cashier when he purchased the acceptance were the same papers which the defendant testified were attached to the acceptance when he signed it, yet, it is clear that there was nothing in these papers in any way impeaching the validity of the acceptance. While the papers show that the sale was made subject to demonstration, they do not show that the demonstration had resulted in rejection of the machinery sold, or that the machinery had proven defective or unsuited for the purposes for which it was intended, or that there had been any breach of the contract of sale. The contract, as disclosed by these papers, appears to contemplate that the demonstration was to be made before the giving of the acceptance; in other words, that the acceptance should be given for the purchase price, after the demonstration and acceptance of the machinery sold. The papers showed that the sale was made on May 23, 1925, and that the machinery was shipped on that date. It appeared upon the face of the acceptance that it was not signed by defendant until June 3rd. We think the plaintiff was entitled to assume that a satisfactory demonstration had been made and the machinery accepted when the acceptance was signed. Surely there was nothing in the papers to show or to indicate to the plaintiff that the demonstration was unsatisfactory and the machinery rejected, or that there had been any breach of the terms of the contract of sale.

The doctrine applicable here is stated by our Supreme Court, in Jennings v. Todd, 118 Mo. 296, 24 S. W. 148, as follows:

"It is now well settled in this State, however, that the doctrine of notice, as it affects the good faith of transactions generally does not apply to negotiable commercial paper. 'Both upon principle and authority,' says WAGNER, J., 'and from the experience of jurists and commercial men, and the interests of the affairs of business life, it is safe to say that the liberal doctrine which promotes the free circulation of negotiable instruments, is the best, and that the good faith of the transaction should be the decisive test of the holder's rights.' [Hamilton v. Marks, 63 Mo. 178.] Since the decision in that case it has been settled law in this State 'that the consideration of negotiable paper in the hands of a bona-fide holder for value before maturity cannot be inquired into. *Mala fides* alone can open the door to such inquiry. Gross negligence, even, is not sufficient; actual notice of the facts which impeach the validity of the note must be brought home to the holder.' [Mayes v. Robinson, 93 Mo. 122.] . . .

"We think, however, that no well considered case can be found in which a collateral contemporaneous agreement providing that the note

should not be paid in the event that an executory contract, which was the consideration of the note, should not. be performed, has been allowed to defeat the negotiability of the note in the hands of an indorsee, though he had notice of such agreement. A great part of the improvement of the country, and of business generally, is carried on with money raised by the discount of notes given upon executory contracts, and if the maker could be allowed to defend against such notes, in case of a breach of contract, on the grounds that the indorsee, though in other respects bona fide, had knowledge of the transaction out of which the note grew, all confidence in such notes as negotiable paper would be destroyed and such business would be paralyzed. By making and delivering a negotiable note, the maker is held to intend that it may be put in circulation and that no defenses against it exist. In purchasing such note no inquiry as to the consideration is required. If a failure of consideration occur, the maker must look to the payee for indemnity.

"On this subject Parsons, in his work on Notes and Bills (Vol. 1, p. 261), says: 'Knowledge on the part of the holder, at the time he took the note, that it was not to be paid on a specified contingency, is not sufficient to defeat his right to recover, although the contingency had then happened, if he was ignorant of this fact.' . . .

"If the breach had occurred to the knowledge of the indorsee when he purchased, he would not, of course, be protected. The settled rules of law governing commercial paper, upon the stability of which alone can the usual business of the country be transacted, cannot be disregarded in order to relieve a few unwary persons from the result of transactions into which they have been drawn by their own credulity or cupidity. Upon careful consideration, we think the contract afforded no defense to the note which was purchased before a breach occurred." See also: Hamilton v. Marks, 63 Mo. 167; Mayes v. Robinson, 93 Mo. 114, 5 S. W. 611; Levy v. Artophone Co. (Mo. App.), 249 S. W. 158; Reeves v. Letts, 143 Mo. App. 196, 128 S. W. 246; Moorehead v. Cummins (Mo. App.), 230 S. W. 656; Downs v. Horton (Mo.), 230 S. W. 103.

The doctrine announced in Jennings v. Todd, was expressly approved in Simpson v. Van Laningham (Mo.), 183 S. W. 324, much relied on by defendant here.

We can see no distinction in principle between the Jennings case and the case at bar, except that the case at bar is a much stronger case for the plaintiff than the Jennings case. The contemporaneous contract in the Jennings case expressly provided that the note involved there should be null and void whenever the payee did not fulfill every point of the contract, whereas the contract of sale involved in the present case does not undertake to control the acceptance or qualify the unconditional promise to pay therein made, or to impeach

its validity or negotiability. It was the sale, not the acceptance, that was made subject to the demonstration of the tractor. The contract does not provide that the promise to pay made in the acceptance is subject to or conditioned upon the demonstration and acceptance of the tractor, or that the acceptance is to be cancelled and returned in the event of an unsatisfactory demonstration. The unconditional promise to pay made in the acceptance remains unaffected by the terms of the contract of sale.

The Simpson case, relied on by defendant, announces that two contemporaneous writings between the same parties, upon the same subject-matter, may be read and construed as one paper, and that this rule applies notwithstanding one of the writings is a promissory note. In that case, the defendant gave his promissory notes in purchase of corporate stock, and at the same time took an agreement from the seller to cancel and return the notes at maturity if defendant elected to surrender the stock, and it was held that the agreement was to be considered with the notes to effectuate the intent of the parties, so that one purchasing the notes before maturity, with knowledge of the agreement, took subject to it. When what is said in the opinion in that case is confined, as it should be, to the facts in the case, it accords with the general current of authority upon the subject, and is in no way in conflict with the conclusion we have reached in the present case. The same may be said as to Citizens' Bank v. Kriegshauser (Mo. App.), 244 S. W. 107, also relied on by defendant.

It is not material in the present case whether the papers showing the contract of sale were attached to the acceptance or not at the time defendant signed it, since under the statute (Sec. 790, R. S. 1919) the negotiability of a bill or note is not impeached because the unqualified order or promise to pay made therein is coupled with the statement of the transaction which gives rise to the instrument.

We conclude that the learned trial court erred in refusing plaintiff's peremptory instruction.

The Commissioner, therefore, recommends that the judgment of the circuit court be reversed and the cause remanded to said court, with directions to enter judgment for plaintiff in accordance with the tenor of the acceptance sued on.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded to said court, with directions to enter judgment for plaintiff in accordance with the tenor of the acceptance sued on. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.